# WHITAKER v. STATE *ex rel.* PIERCE.

No. 8660.    Opinion Filed October 31, 1916.

(160 Pac. 890.)

1. **QUO WARRANTO—Primary Election—Contest.** Where plaintiff was shown by the canvass of the precinct returns to have been nominated for the office of county commissioner upon the Democratic ticket, and thereafter upon a recount under section 3038 of the Revised Laws of Oklahoma 1910 defendant was shown to have received the nomination, plaintiff has a remedy by an action in the nature of **quo warranto** to try the title to such nomination.

2. **ELECTIONS—Primary Elections—Recount—Power of County Election Board.** The duties performed by the county election board when recounting the ballots cast at a primary election under section 3038, Rev. Laws 1910, are ministerial in their nature, and said board in so doing is not vested with judicial power to inquire into and determine questions that are judicial in their nature, but is limited to a recount of the ballots upon their face.

3... **SAME.** The returns made by the precinct officials to the county election board, until impeached, constitute **prima facie** evidence of the votes cast and of the result of said primary election, which will be overcome when a different result is made to appear upon a recount of the ballots.

4. **ELECTIONS—Contests—Evidence.** As between the ballots and the canvass thereof by the election officers, the ballots are the primary and controlling evidence where it is made to appear that they have been preserved in the manner and by the officers prescribed by statute, and that they are the identical ballots cast by the voters, and that while in such custody they have not been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity for their having been changed or tampered with.

5. **SAME—Primary Elections — Contest — Evidence.** Where it is made to appear that after the ballot boxes and election returns have been delivered into the custody of the county election board and before a recount of the ballots the boxes containing the ballots cast at an election have been left in the custody of a person other than one of the election officials, and that a number of ballots cast by the voters have been abstracted and destroyed and other ballots forged and placed in said boxes, and a number of

other ballots cast at said election are mutilated so as to change the result of said election as determined by the canvass of the returns, the ballots are discredited to such an extent as to destroy their controlling weight as evidence in a contest over a nomination at such election.

6. **SAME—Questions for Jury.** Whether the ballots introduced in evidence were the identical ballots cast by the voters, and whether they were in the same condition as when cast, and the weight to be given to the ballots as evidence, as well as to all other testimony in the case, are questions to be left to the jury.

7. **SAME—Right of Action.** Where, because of the illegal and fraudulent acts of another in tampering with the ballots cast at a primary election, a person who was a successful candidate therein is deprived of his nomination upon a recount under section 3038, Rev. Laws 1910, he may maintain an action to try the title to such nomination against the person wrongfully declared by the election officials entitled thereto, irrespective of the identity of the culprit, whether his opponent in said primary was connected with said unlawful conduct or not.

8. **SAME—Admissibility of Evidence.** In the instant action it was not error to reject an offer by defendant to show how certain voters voted in said primary election.

(Syllabus by the Court.)

*Error from District Court, Pittsburg County;*
*R. W. Higgins, Judge.*

Primary election contest by the State, on the relation of J. O. Pierce, against Ernest Whitaker. Judgment for relator, and defendant brings error. Affirmed.

*Arnote & Anderson* and *Andrews & Leidtke,* for plaintiff in error.

*Wilkinson & Scott, Geo. M. Porter,* and *W. C. Gilmore,* for defendant in error.

HARDY, J. This is a contest over the Democratic nomination for the office of county commissioner for the Second commissioner's district of Pittsburg county, at the primary election therefor held in that county on August 1, 1916. The official returns of the precinct officials at

58—22

said primary, as canvassed by the county election board, showed that defendant in error, Pierce, received 250 votes, and plaintiff in error, Whitaker, received 238 votes, for such nomination. The parties will be referred to as they appeared in the trial court.

The defendant Whitaker, who lost on the face of the returns as made by the precinct officers, claimed a recount under section 3038, Rev. Laws 1910, which recount showed that plaintiff, Pierce, received 230 votes, and defendant, Whitaker, 244 votes. After the recount plaintiff, Pierce, brought this action to contest the right of defendant, Whitaker, to the nomination for said office.

Defendant contends that the laws of this state do not permit the maintenance of an action of this kind. Section 3035, Rev. Laws 1910, declares that all provisions of the laws governing general elections, not in conflict with chapter 28, entitled "Elections—Primary," are made applicable to primary elections, and section 3054 provides that all contests arising out of primary elections shall be settled and decided in the same manner as is now or may hereafter be by law provided for general elections, except as otherwise provided.

*Roberts et al. v. Marshall et al.*, 33 Okla. 716, 127 Pac. 703, was an action for mandamus to the State Election Board in which Marshall sought to compel the State Election Board to meet and recanvass a second set of returns certified to it by a county election board after the original returns had been canvassed and the result declared and certificate of nomination issued. The writ was denied; the court holding that plaintiff had a remedy by an action in the nature of *quo warranto* against the holder of the nomination to try the title thereto, following *Newhouse v.*

*Alexander*, 27 Okla. 46, 110 Pac. 1121, 30 L. R. A. (N. S.) 602 Ann. Cas. 1912B, 674.

The duties performed by the county election board in a recount under this section of the statute are ministerial in their nature, and the board is not vested with judicial power to inquire into and determine questions that are judicial in their nature, but are limited merely to a recount of the ballots upon their face. *Stearns v. State*, 23 Okla. 462, 100 Pac. 909; *Shelton v. McMillan, Judge*, 43 Okla. 486, 143 Pac. 196.

This being true, if plaintiff were not entitled to maintain this action he would be without a remedy; but such is not the condition of the law, for it is expressly enacted under section 3054, as already seen, that all contests arising out of primary elections shall be settled and determined in the same manner as similar controversies arising out of general elections, except where otherwise expressly provided. The plaintiff therefore had the right to maintain this action, and, upon proper showing, was entitled to a judgment in his favor.

There were five candidates for the nomination for the office of commissioner of district No. 2, and at Kiowa precinct plaintiff, Pierce, received 80 votes, and defendant, Whitaker, 15 votes, and one Allen, a candidate for the same office, received one vote. At Pittsburg precinct plaintiff, Pierce, received 58 votes, and defendant, Whitaker, four votes. The plaintiff alleged that after the election had been held and the ballots cast thereat counted by the precinct officials and the returns properly certified to the county election board, the ballot boxes containing the ballots cast at Kiowa and Pittsburg precincts were opened, and from the box containing the votes cast at Kiowa precinct ten of the ballots cast by the voters in said election

were removed, and ten other ballots were taken from the bundle of unused ballots, and were forged in favor of defendant, Whitaker, and placed on the string, and that such other ballots which had been cast by the electors were mutilated by stamping same opposite the name of some other candidate for commissioner in said district, thereby changing the result of the election at that precinct, so as to show that plaintiff only received 68 votes, instead of 80, and that defendant, Whitaker, received 21 votes, instead of 15, as shown by the official returns. That from the box containing the ballots cast in Pittsburg precinct six ballots were taken from the back of the pad or bundle of unused ballots, which had been returned by the precinct officials, and were forged in favor of defendant, Whitaker, and placed in the box, and six ballots that had been voted for plaintiff were taken out of the ballot box and destroyed, and at said time six other ballots legally cast for plaintiff were mutilated.

The evidence shows that 286 ballots were printed and sent to Kiowa precinct, which were numbered consecutively from 1 to 286. The name of plaintiff, Pierce, was printed at the bottom of the list of names of candidates for commissioner on all of said ballots up to and including No. 242, and upon the remainder the name of one Williamson, a candidate for said office, was printed at the bottom of the list of names of candidates for that office. It appears from the evidence that all of the ballots voted at the Kiowa precinct except ten have plaintiff's name at the bottom, which ten have the name of Williamson in that position. The number of ballots returned by the precinct officials, including the ballots voted, two that were mutilated, being Nos. 25 and 93, and those unused, amounted to 286, the exact number sent them prior to the election. Upon the recount

only 276 ballots were found, and when the boxes were opened the envelopes containing the voted ballots had been torn open. Upon the original count the ballot voted for Allen was counted next to the last vote, and placed upon the string next to the last ballot. Upon the recount the Allen ballot was found to be the eleventh ballot from the last on the string. One hundred and forty-seven ballots in the Kiowa box are stamped in blue and black ink, while the ten ballots alleged to have been forged are stamped in purple ink.

One hundred and forty-six ballots were sent to Pittsburg precinct, all of which were accounted for in the precinct returns, 80 ballots being cast, 66 unused, and none mutilated. The last number in the bundle of unused ballots now is No. 140, showing a discrepancy of six ballots between the amount sent to the precinct officials and returned by them and those in the possession of the county election board. A number of ballots, upon the recount, in this box were mutilated, and the mutilation plainly appears to have been made by a defective stamp, and in purple ink, while the voters in the preparation of their ballots used a blue or black ink, and a different stamp. Upon the recount of the ballots cast in the Pittsburg precinct plaintiff, Pierce, is shown to have received 51 votes, and defendant, Whitaker, eight votes. It is admitted that the official returns of all the other precincts are correct, and on the recount Pierce received a total of 230 votes, and Whitaker 244 votes.

Neither side makes any contention that any irregularities affecting the result occurred upon the part of the precinct officials, or that the ballots had been tampered with prior to their delivery into the hands of the county election board. Defendant, in his brief, states:

"We do not believe it is possible for the human mind to say that there is any evidence to show that these ballots were changed after leaving the hands of the election boards at Kiowa and Pittsburg or had been altered before the recount. Nor can we believe that it is possible for any one to read this record and say that they were changed at all."

The returns by the precinct officials, until impeached, constituted *prima facie* evidence of the votes cast, and of the result of said primary election. *Moss v. Hunt,* 40 Okla. 20, 135 Pac. 282. The recount, showing a different result from that found upon a canvass of the returns by the precinct officials, overcame the *prima facie* effect of those re-returns, and to impeach the result of the recount plaintiff introduced evidence to show that during the canvass of the precinct returns by the county election board, which occupied the time of the board from the 1st day of August until the 5th of that month, the board while in session during the daytime had said ballot boxes and returns in its possession, but at night left them in charge of a man by the name of Ray, who was employed by the board to guard them, and after the canvass was completed they were left in a certain room, the doors and windows of which, with the exception of the front door, were nailed down, and the front door locked with two Yale locks. As between the ballots and the canvass thereof by the election officials, the ballots would ordinarily be the primary and controlling evidence, provided it be made to appear that they had been preserved in the manner and by the officers prescribed by the statute, and that they were the identical ballots cast by the voters, and that while in said custody they had not been so exposed to the reach of unauthorized persons as to afford a reasonable opportunity of their having been changed or tampered with. *Moss v. Hunt, supra; Moss v. Hunt,* 47 Okla. 1, 145 Pac. 761; *Thomas v. Marshall,* 160

Ky. 168, 169 S. W. 615; *Stafford v. Sheppard*, 57 W. Va. 84, 50 S. E. 1016; *Rhode v. Steinmetz*, 25 Colo. 308, 55 Pac. 814.

The condition of these ballots when the boxes were opened by the county election board at the time of the recount shows beyond any question to our minds that they had been tampered with, and that a number of ballots cast by the voters had been destroyed and other ballots forged and substituted therefor, while others had been mutilated after reaching the custody of the county board. We have already seen that neither side contends that these matters happened until after the ballots and returns were in the hands of the county board, and the facts and circumstances in evidence are sufficient to thoroughly discredit the ballots as the best evidence of the result of said election. It was proper to admit them in evidence for consideration in order to determine their identity and condition at the time of the recount, as compared with the condition they were in when delivered to the county election officials. These were questions of fact for the jury to determine, whether they were the identical ballots cast by the voters, and whether they were in the identical condition as cast, and to determine whether the greater weight should be given the ballots or to the other evidence as to the result of the election. *Moss v. Hunt*, 47 Okla. 1, 145 Pac. 761. These issues were properly submitted to the jury, who found in favor of the plaintiff upon the facts, and their verdict was abundantly sustained by the evidence.

Defendant claims that because the evidence failed to show that he participated in the alleged fraudulent and illegal acts, plaintiff is not entitled to prevail, but he cites no authorities in support of this position. This contention is without merit. If such were the law, no matter what

wholesale frauds might be indulged in or how many crimes committed against the purity of the ballot, the successful candidate could not complain, unless his adversary participated in the wrongful acts which deprived him of the nomination or election. It matters not who commits the fraud effecting a change in the result of the election, the candidate who is successful therein, irrespective of the identity of the culprit, is entitled to have the correct result declared in a proper action brought for that purpose.

It is further urged that the court committed error in not permitting the defendant to show by certain voters how they voted in the primary. There was no error in rejecting this evidence. The object of the law in providing for a secret ballot is to secure the independence of the elector by requiring the exercise of his right of franchise in absolute secrecy, and free from solicitation and annoyance, and to preserve that secrecy after his ballot is cast, and the provisions of the statute upon this subject are mandatory in their character, and designed to prevent the corruption and abuses that were possible and sometimes prevailed in elections before the establishment of the present system. *Board v. Dill,* 26 Okla. 104, 110 Pac. 1107, 29 L. R. A. (N. S.) 1170, Ann. Cas. 1912B, 101.

That defendant could not compel them to testify is clear, to our minds, and the fact that they might have stated to other persons how they voted did not change the rule.

The judgment is affirmed.

All the Justices concur, except THACKER, J., absent.