[Nos. 3650-3652. Dec. 12, 1930.]

STATE ex rel. SCOTT v. HELMICK, Judge of Second District Court et al.

SCOTT v. CAMPBELL et al.

SAME v. SECOND JUDICIAL DISTRICT COURT et al.

[294 Pac. 316.]

R. P. Barnes and George R. Craig, both of Albuquerque, for relator and petitioner.

J. S. Vaught, of Albuquerque, for respondents.

OPINION OF THE COURT

CATRON, J.

Original proceeding in mandamus, No. 3650, against Milton J. Helmick, district judge, et al.; original proceeding in prohibition, No. 3651, against Bernalillo county commissioners, as county canvassing board; original proceeding in prohibition against Second judicial district court, Bernalillo county, and Milton J. Helmick, judge thereof. By consent, argued and submitted as one cause.

At the general election of November 4, 1930, Mrs. Will Rodgers and Mrs. Lucy Scott were the respective democratic and republican candidates for the office of county clerk of Bernalillo county. The return of the canvass by the county board of canvassers gave Mrs. Rodgers 7,039 votes and Mrs. Scott 6,946 votes. Within six days after the completion of the canvass by the county board of canvassers, Mrs. Scott made application to the judge of the district court of Bernalillo county for a recount of the votes cast at said election in certain precincts and election districts, which said application was filed in the district court of Bernalillo county as cause No. 18586. Upon said application, the Hon. Milton J. Helmick, judge of said district court, on November 18, 1930, entered an order directing a recount of the votes in said precincts and election districts, designating November 21, 1930, and the county courthouse of Bernalillo county, as the time and place therefor; and ordering the county clerk to issue summons to the election officers of said precincts and election

districts, commanding them to attend at the time and place designated and make such recount, and that such recount be held, determined, and certified as prescribed by law. The order further provided that the county chairman of each dominant political party be notified of the time and place fixed for such recount. In said order the district judge designated W. H. McMains to act for him in such recount.

The election officers met at the time and place designated, and, in the presence of the county clerk and W. H. McMains, a recount of the votes for county clerk in the designated precincts and election districts was made. At the conclusion of the recount, and on November 21, 1930, the election officers certified the result thereof. The certificates so made, compared with the original canvass, show a gain of votes for Mrs. Scott and a loss for Mrs. Rodgers sufficient to change the result of the election and entitle Mrs. Scott to the certificate of election.

The certificates so made, in so far as the same are contained in the record before us, disclose a lack of uniformity as to form and contents. They do, however, disclose that the election officers believed the original count of the votes made by them to be correct, and that the ballot boxes had been tampered with and votes changed between the time of the original count and the recount. From some of the certificates it appears that for such reasons some of the election officers either refused to recount the votes, or refused to certify to the correctness of the recount, and that they only did so upon some order of the court made November 21, 1930, which order, however, is not contained in the record before us, but which apparently was an order by the court directing the election officials to recount the ballots and certify the result to the board of county commissioners, the county board of canvassers.

On November 25, 1930, W. H. McMains, who had been designated by the district judge to act for him in such recount, filed a report with the clerk of the court in cause No. 18586, the recount proceeding, wherein he set forth facts disclosed by the various certificates of recount signed by the election officials, also other facts within his own

knowledge, all to the effect that the ballot boxes had been tampered with and the votes changed between the time of the original count and sealing thereof and the time of the recount, and stating:

"That in view of the statement of the election officials and the obvious tampering with ballots after they had left the hands of the voters, your representative is unable to authenticate the correctness of the recount, and therefore declines to sign the certificate of recount as your representative or transmit the same to the Board of County Commissioners unless ordered by the Court to do so."

On November 25, 1930, the court made and entered the following order:

"On reading the report of W. H. McMains, representative of the Court herein, it is ordered that hearing on said report be had at ten o'clock, A. M., November 26, 1930; the Clerk of this Court issue subpoenas for the election officials who made the said certificates for them to appear and testify at said hearing, and that attorneys for interested parties be notified of said hearing."

At the inception of said hearing attorneys for Mrs. Scott objected thereto upon the ground that a recount proceeding is not a judicial proceeding, but that the court acts ministerially and can do nothing but certify that the recount was held in his presence, or in the presence of his representative, and was powerless to take any other action in the matter or exercise any judicial functions whatever. The court proceeded with the hearing on the theory that a recount is a judicial proceeding throughout. Whereupon the attorneys for Mrs. Scott withdrew from the hearing and from the courtroom. After examining the election officials and taking such testimony as the court deemed necessary, the court, on the 26th day of November, 1930, made the following findings, conclusions, order, and judgment: ·

"1. That no error or fraud was committed in the original count by election officials.

"2. That the original count in Precincts 8, 12-B and 13-B was correct, and no fraud or error was committed in the count.

"3. That the so-called recounts in Precincts 8, 12-B and 13-B are not correct.

"4. That certain ballots in these three precincts bear on their face external evidence of tampering and fraud, and that said so-called recounts are based in whole or in part upon such ballots.

"5. That the so-called recount of November 21, 1930, was not in fact a recount of the same ballots which had been previously cast by voters but of different ballots from those cast by the voters.

"From these Findings, the Court concludes that the so-called recount figures are unworthy and untrue and should not be certified to the County Commissioners as a Canvassing Board; that said recount should not be in any manner authenticated or certified by this Court or its representative; that the so-called recount was not a recount at all, and that petitioner should have no benefit from such recount figures. The Court will not order its representative to certify that the recount was conducted in his presence nor transmit the said recount to the County Commissioners. The County Commissioners are directed to canvass on the certificates now before them."

On the 28th day of November, 1930, Mrs. Scott filed her motion and application in this court for an alternative writ of prohibition against the Second judicial district court of the state of New Mexico sitting within and for the county of Bernalillo, and Milton J. Helmick as judge thereof, No. 3652, to restrain said court and judge from pursuing or attempting to enforce the order and judgment made and entered in said cause No. 18586 on November 26, 1930, or from taking any further proceedings in said cause, upon the ground that said respondents had no jurisdiction to hear, try, and determine the matters attempted to be adjudicated and decided by said pretended judgment entered in said cause, and have no jurisdiction to take any further proceedings therein.

Upon this application an alternative writ of prohibition was issued as prayed, and served upon the respondents. To this alternative writ respondents made return, and the cause was fully argued to us and submitted.

Respondents contend that the entire proceeding for the recount of ballots is a judicial proceeding; that throughout the proceedings had in said cause No. 18586 the district court and the judge thereof acted with jurisdiction of the subject-matter and the parties; that therefore the alternative writ of prohibition should be dissolved.

The determination of the questions so presented rests within our Election Code, 1929 Compilation, Chapter 41, the material portions of which are:

"41—618. Application by candidate for county office. Whenever any candidate for any county office or any office for which

the board of county commissioners sitting as a county board of canvassers issues a certificate of election shall have reason to believe that error or fraud has been committed by the election officers of any precinct or election district in counting or tallying the ballots or certifying the results of any election whereby the result of the election in such precinct or election district has not been correctly determined, declared or certified, such candidate may within six days after the completion of the canvass by the board of county commissioners sitting as a county board of canvassers apply to the district judge for the county for a recount of the votes cast at such election. Said application shall be filed in the district court for the county in which such candidate resides."

"41—619. Cost of proceedings. Any applicant for such recount upon applying therefor shall deposit with the clerk of the district court fifty dollars in cash or a sufficient surety bond in an amount equal to fifty dollars for each precinct or election district for which a recount is applied for as security for the payment of the costs and expenses of such recount, in case the original count be confirmed or the result of such recount is not sufficient to change the result of such original count. If it shall appear that error or fraud sufficient to change the result has been committed, then the costs and expenses of such recount shall be paid by the county upon warrant of the county clerk directed to the county treasurer and from the general fund of said county; but if no error or fraud shall appear sufficient to change such result, then the costs and expenses of such recount shall be paid by the applicant. Said costs shall consist of docket fee for filing application, mileage of the sheriff in serving summons and fees and mileage of election officers at the same rates allowed witnesses in civil actions, but if the recount shows that error or fraud has been committed by the election officers of any precinct or election district they shall not be entitled to such fees or mileage."

"41—620. Recount proceedings. Immediately upon the filing of the application for recount, the district judge shall by order fix the place and date of such recount, which date shall not be more than ten days after the filing of the application and shall direct the county clerk to issue a summons to the election officers of the precinct or election district complained of, commanding them to attend at the time and place fixed by said order and make such recount. Such summons shall be forthwith served by the sheriff upon each of said election officers in person. The county clerk shall notify the county chairman of each of the dominant political parties in the county of the date and place fixed for such recount. Such notice shall be by registered mail. The election officers, district judge and county clerk shall meet at the court house of the county at ten o'clock A. M., on the date set. The ballot boxes of the precincts or election districts involved in said recount shall be opened and the election officers shall recanvass, recount and retally the ballots as to the office in question in the presence of the district judge or some person delegated by said judge to act for him, and of the county clerk and of any other person who may desire to be present.

"After completion of such recount, the election officers shall certify to the board of county commissioners the result of such recount. The district judge and county clerk shall certify that

such recount was made in their presence. At such recount, the election officers shall recanvass and recount only the ballots which the judges accepted and placed in the ballot box as legal ballots at the time they were cast and shall not inspect or disclose the number on any ballot."

"41—621. Recanvass by county canvassing board. Immediately upon the certification of the recount as hereinabove provided, the board of county commissioners shall meet as a county board of canvassers and recanvass the returns as to the office in question and in making such recanvass shall use the certificates of recount from the election precincts or election districts instead of the original returns from such election precincts or election districts.

"If it shall appear from such recount that fraud or error has been committed sufficient to change the result of such election, then the county board of canvassers shall revoke the certificate of election already issued to any person for such office and shall issue a certificate of election in favor of the person who shall be found to have received a plurality of the votes cast at such election, as shown by such recount, which certificate shall supersede all others and entitle the holder thereof to the same rights and privileges as if such certificate had been originally issued by said county board of canvassers."

"41—624. Mandamus to compel performance. If the state canvassing board or the county canvassing board or any election officer or officers shall fail or refuse to do or perform any of the acts in regard to such recount required of them by the provisions hereof, the applicant for recount may apply to any court in the state for writ of mandamus to compel such performance and such court shall entertain such application."

"41—321. Ballot boxes. It shall be the duty of the secretary of state at least five months before the next election after this act takes effect to provide uniform ballot boxes, and to transmit to the county clerk of each county, the number necessary to supply the precincts and election districts in his county. Such ballot boxes shall be of galvanized sheet metal, with wrought steel safety clasps and each box shall be equipped with two diverse padlocks, of Yale or similar design, with one key for each lock, and bearing corresponding numbers. * * *"

"41—343. Ballot box—Keys—Poll books, etc.—Disposition of. Immediately upon the conclusion of the counting and tallying of the votes and certifying the same and placing the ballots and envelopes in the ballot box, said ballot box, all election supplies, and one poll book, or where there are counting judges one poll book certified by each set of election officers, and the 'Final' registration book shall be immediately returned to the county clerk by the judges, and the other poll book or books shall be immediately placed in the mailing tube and mailed to the secretary of state. The poll book and unused election supplies returned to the county clerk shall not be placed in the ballot box. An election judge of one of the political parties shall return to the county clerk one of the keys to the ballot box enclosed in an envelope addressed to said clerk; a judge of the opposite political party shall place his key in an envelope provided for that purpose, and mail it to the judge

of the district court of the county in which the election is held. The district judge shall retain such key in his possession until the destruction of the ballots as herein provided, except as herein otherwise provided after which it shall be delivered to the county clerk. * * *"

Our attention has not been called to any statute of any sister state similar to ours, and we have been unable to find any, although we have found recount statutes in several states. Under the circumstances the decisions from other states, based upon their statutes, are of little, if any, assistance to us in construing our statutes.

The statutes hereinabove set forth give to any candidate for any county office the right to institute recount proceedings if he believes that error or fraud has been committed by the election officers in counting or tallying the ballots or certifying the results so as not to correctly determine, declare, or certify the result of the election in any precinct or election district, provided such candidate shall, within six days after completion of canvass by the county board of canvassers, apply to the district judge for a recount of the votes. The application, however, must be filed in the district court, and the applicant must deposit cash or give surety bond for the costs and expenses of the recount. Immediately upon the filing of such application for a recount, as provided in said statute, the district judge shall, by order, fix the place and date of such recount and direct the county clerk to issue summons to the election officers commanding them to attend at the time and place and make such recount. It is obvious that if such application be filed in the district court and the district judge is to make an order thereon, the district judge has a judicial duty to perform—that of determining whether the application conforms to the statute, and whether or not the prerequisite cash deposit or cost bond has been given entitling the applicant to the order of recount. If the application be insufficient, or other prerequisites be lacking, the court, in the exercise of the jurisdiction conferred upon it, might decline to issue the order. If, however, the application be sufficient and the prerequisites have all been met, the court's duty to make the necessary order is clear. It is, therefore, evident that the foregoing procedure is a special case or proceeding created by the

Legislature, in compliance with section 13, art. 6 of our Constitution, enlarging the jurisdiction of the district court.

Our statutes further provide that after the order for recount has been made, the election officers, district judge, and the county clerk shall meet at the time and place designated; that the ballot boxes involved in said recount shall be opened and the election officers shall recanvass, recount, and retally the ballots as to the office in question, in the presence of the county clerk and the district judge, or some person delegated by said judge to act for him; that after the completion of such recount the election officers shall certify to the board of county commissioners the result of such recount. The district judge and the county clerk shall certify that such recount was made in their presence.

It is contended by respondents that the Legislature created a special case or proceeding, and has conferred upon the district court jurisdiction throughout the entire recount, with power to investigate and determine in said case whether or not fraud has been committed in any manner after the ballot boxes were sealed and delivered as provided by law, and to hold hearings upon such questions and enter orders and judgments thereon adjudicating whether the original canvass shall stand or the recount be certified as prescribed by the statute. That such is not the case we think clearly appears from the statute itself. As hereinabove pointed out, the Legislature enlarged the jurisdiction of the district court in certain matters requiring the exercise of judicial discretion. However, after the order of recount is made, the statute confers no further functions on the district judge than to be present when the ballot box is opened, and to certify that such recount was made in his presence. These are not duties calling for the exercise of judicial discretion; they are merely ministerial in their nature. Indeed, section 41—624 specially provides that if any county canvassing board or any election officer or officers shall fail or refuse to do or perform any of the acts in regard to such recount required of them by the provisions of the statute, the applicant for recount may apply to any court in the state for a writ of mandamus to compel such performance, and such court

shall entertain such application. It is manifest from the foregoing that the legislature contemplated that upon the district court ordering a recount of votes, its judicial functions and jurisdiction ceased, and that if any election officer refused to comply with the order of recount, or perform the statutory duties in connection with a recount, a separate proceeding was to be commenced by mandamus in some court, which would compel the compliance with the statute. This is inconsistent with and repugnant to any contention that the district court or judge had jurisdiction throughout the entire recount to proceed in a summary manner, as it did in two instances in the case at bar.

The imposition of the ministerial duties upon the district judge is well explained by the examination of other portions of our Election Code. Section 41—321, relating to ballot boxes, requires that each ballot box shall be equipped with two diverse padlocks, of Yale or similar design, with one key for each lock. Sections 41—340 and 41—343 provide for the preserving of the integrity of the ballot box and the contents thereof, for the delivery of the same, the poll books, returns, keys to the ballot boxes, and other election supplies. The ballot box and one key shall be delivered to the county clerk; the other key shall be delivered to the judge of the district court of the county in which the election is held. The district judge shall retain his key in his possession until the destruction of the ballots, except as otherwise provided in the act. The presence of the district judge or of a representative designated by him, and to whom he may entrust the key, is therefore legally essential to the opening of the ballot boxes for the purposes of a recount. This not only explains the sole necessity for the presence of the district judge, but, since he may be represented by some one else, is conclusive that the duty to be performed by him or his representative is not judicial.

We must, therefore, hold that the jurisdiction of the district court or judge ceased upon the ordering of the recount, and that under the statute it becomes mandatory upon him to certify that the recount was had in his presence, or in the presence of his representative, if such be the fact.

It follows that the hearing held by the district court upon the report of W. H. McMains, his representative, the findings of fact and conclusions of law made, and the judgment or order entered thereon, as well as the order of November 21, 1930, hereinabove referred to, were had and made without jurisdiction, and are a nullity.

In the opinion of the learned district judge there is a suggestion that, holding as we do, we must further hold that the recount provisions, or some part of them, are unconstitutional, as a legislative attempt to confer nonjudicial powers and to impose nonjudicial duties upon judges. This matter was not pressed at the hearing and is not considered.

Section 41—620 provides that after the district court has ordered the recount the ballot boxes of the precincts or election districts involved in said recount shall be opened and the election officers shall recanvass, recount, and retally the ballots as to the office in question, and after the completion of such recount shall certify to the board of county commissioners the result of such recount. The statute gives them no discretionary power to determine whether error or fraud has been committed either in the count of the original ballots, or at any other time. Their duty is specific—it is to recount the ballots as they find them. Undoubtedly, if the election judges should feel that the ballot boxes had been tampered with, or that any votes had been changed, they might refuse to make the recount. Their duty is either to recount or refuse to do so. If they refuse, they can then be mandamused to perform their duty under the provisions of section 41—624, and in answer to the alternative writ could set up any grounds they might have for refusing to recount the ballots. This would present an issue to a court of competent jurisdiction to be heard and determined. However, after the election judges have made the recount they have but one duty to perform, and that is to certify the result thereof to the board of county commissioners without expressing any views they may have regarding the integrity of the ballot box or the correctness of either the original count or the recount.

Section 41—621, Id., provides that immediately after the certification of the recount the county board of canvassers shall recanvass the returns, using the certificates of recount instead of the original returns, and if it shall appear from such recount that fraud or error has been committed sufficient to change the result of the election, then said board shall revoke the certificate of election already issued and shall issue a certificate of election in favor of the person who shall be found to have received a plurality of the votes cast, as shown by such recount. Here again the statute is mandatory, specifically providing what the board is to do and how to do it. It is given no discretion, but must use the certificate of recount, and if it appears from the recount that fraud or error has been committed sufficient to change the result of the election, it must issue the certificate of election accordingly, disregarding any beliefs or opinions or foreign matter which the election judges may have written into the certificates of recount. The district court is given no jurisdiction over the actions or conduct of this board, except in separate mandamus proceedings, as provided in section 41—624, Id., or possibly some other appropriate, independent proceeding.

In cause No. 3650, upon petition of Mrs. Scott, an alternative writ of mandamus was issued to Milton J. Helmick, judge of the Second judicial district court, and W. H. McMains, designated by said judge to act for him in the matter of the recount of the votes, commanding them to certify to the board of county commissioners of Bernalillo county that the said recount was made in their presence or in the presence of one of them, as to each precinct or voting district recounted, or show cause to the contrary. To this alternative writ respondents made answer and return, contending that this court exceeded its jurisdiction in awarding the alternative writ to an inferior tribunal requiring it to set aside a judgment already rendered, and ordering it to enter a different judgment in a proceeding before it, and seeking to control the discretion of an inferior tribunal.

We have hereinabove pointed out that the alleged judgment, order or orders made by the district judge, subse-

quent in time to the order directing a recount, were beyond the jurisdiction of the court; that all matters subsequent to the order of recount are merely ministerial, and that the certificate to the effect that the recount was made in the presence of the district judge is merely a ministerial act specifically enjoined by statute, leaving no discretion, if, in fact, the recount was so made. We must, therefore, find against respondents' contention.

It does not follow, however, that this court may enforce upon respondents the performance of their ministerial duty in the premises. The Constitution, art. 6, §§ 3 and 4, define this court's jurisdiction. Its original jurisdiction in mandamus extends only to state officers, boards and commissions and to a superintending control of inferior courts. In the matter of certifying that the recount took place in his presence, the district judge or his representative is not a state officer, board or commission, nor is he an inferior court. His status is not more than that of a recount official. The alternative writ of mandamus must, therefore, be dissolved.

A third proceeding, prohibition, against Roy O. Campbell, C. T. French and Frank Butt, county commissioners, sitting and acting as a county canvassing board of the county of Bernalillo, was instituted in this court by Mrs. Scott as cause No. 3651, wherein an alternative writ was issued. To this writ there is no return, but counsel have advised this court that these respondents are willing to abide by the decision of this court in the other two cases, and perform their statutory duty accordingly. Therefore, we now dissolve said alternative writ in cause No. 3651 and discharge said respondents.

From the foregoing, it follows that the alternative writ of prohibition should be made absolute in cause No. 3652; that the alternative writ of mandamus in cause No. 3650, and the alternative writ of prohibition in cause No. 3651 should be dissolved, and the respondents therein discharged, and it is so ordered.

BICKLEY, C. J., and WATSON, and PARKER, JJ., concur.

SIMMS, J., did not participate.