STATE EX REL. GOODHUE COUNTY NATIONAL BANK, RELATOR, *v.* DISTRICT COURT ET AL., RESPONDENTS.

(No. 7,264.)

(Submitted April 16, 1934. Decided April 24, 1934.)

[31 Pac. (2d) 837.]

*Messrs. Belden & DeKalb,* for Relator, submitted a brief; *Mr. H. Leonard DeKalb* argued the cause orally.

*Mr. H. O. Vralsted* and *Mr. John B. Muzzy,* for Respondents, submitted a brief; *Mr. Vralsted* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

On June 16, 1930, the Meadow-Bar Ranch Company, a corporation, gave a mortgage to the Goodhue County Savings

Bank of Red Wing, Minnesota. The mortgage, which covered certain lands lying in Fergus and Judith Basin counties, Montana, was on July 23, 1931, assigned to relator. About the same time the mortgage was executed, the Meadow-Bar Company executed a lease of the mortgaged premises to one Gilbert Ecker. Ecker immediately went into possession and has had continuous possession ever since. The lease as originally executed was to run until the crops grown in the season of 1932 were harvested and threshed. Some time in the spring of 1932—prior to the month of May—Ecker and the Meadow-Bar Company rescinded the lease and made a new oral lease covering the same premises. The new lease contained new and additional provisions, but continued the tenure until after the crops were harvested and threshed in the fall of 1932.

In May, 1932, relator commenced proceedings in the district court of Fergus county against the Meadow-Bar Ranch Company to foreclose the mortgage. A decree of foreclosure was entered on July 23, 1932. The decree provided that the purchaser at the sheriff's sale be let into immediate possession. On August 20, 1932, at a sale under the decree, the relator became the purchaser of the property, and a sheriff's certificate was issued to it. No redemption was ever made, and on September 29, 1933, sheriff's deed issued.

On November 29, 1933, relator filed its petition for writ of assistance against Gilbert Ecker, who was still in possession of the land. An order to show cause was thereupon issued and served on Ecker, who appeared and filed his answer. In it Ecker alleged that he had not been made a party to the foreclosure proceedings; that he was in possession of the property by virtue of the oral lease from the Meadow-Bar Company; that relator had actual and constructive notice of his tenancy and acquiesced therein; that at the expiration of his term in the fall of 1932, Ecker held over and continued in possession, and farmed the premises with the knowledge and consent of relator; that in the fall of 1933 relator demanded and received rental from him; that after the expiration of his term in the fall of 1933 (Ecker's contention as to this term being evi-

dently based on the provisions of section 9889, Revised Codes 1921, hereinafter referred to) he continued to hold over as tenant, with the knowledge and consent of relator; that he had in good faith planted crops in reliance upon relator's silence and acquiescence; that relator had been guilty of laches and had waived its rights to a writ of assistance against Ecker.

Relator filed a reply in which it denied the affirmative allegations of Ecker's answer. The cause came on for hearing before the respondent court. Relator offered to introduce evidence so that the court might determine the issues presented by the pleadings. Ecker objected to the introduction of any evidence, on the ground that his answer made a prima facie showing that new and independent rights were involved, and that the court had no right or jurisdiction to adjudicate such rights in a proceeding for a writ of assistance. The court, holding that the answer did constitute a prima facie showing of new and independent rights, that evidence was not admissible and that it had no jurisdiction to proceed further in the hearing, denied the application for the writ.

Upon this state of facts relator seeks a writ of mandamus directing the respondent court to hear evidence upon the application and thereafter to decide whether a writ of assistance should issue.

"The writ [of assistance] is a proper remedy to place in possession a mortgagee who has received a sheriff's deed pursuant to a foreclosure sale as against the mortgagor and all persons holding under him with notice after the commencement of the action." (*Beck* v. *Felenzer*, 69 Mont. 592, 223 Pac. 499, 501; *Lepper* v. *Home Ranch Co.*, 90 Mont. 558, 4 Pac. (2d) 722.)

It is true that Ecker was not made a party defendant in the foreclosure action. Nevertheless he was bound by the decree, just as much as though he had been made a party. He was holding under an unrecorded lease, and so became subject to the decree by reason of the provisions of section 9467, Revised Codes 1921. If the relations existing at the time of the foreclosure were continued, or if they did continue, then there

can be no question that Ecker was bound by the decree, and that the writ of assistance was the proper remedy to oust him from possession. But the writ relates back to, and operates upon, only those rights which might have been determined by the decree. If Ecker acquired a new and independent right in the property after the decree, such a right, or a prima facie showing thereof, as a matter of course prevents the issuing of the writ. (3 Cal. Jur. 334.)

It will be observed that the question here to be determined is whether Ecker did make a prima facie showing that he was holding the property under a new and independent right, rather than under the old relation which existed at the time of the foreclosure. He claims that the allegations in his answer, to the effect that he was holding under a new and independent right, constituted a prima facie showing of such right. In the light of the pleadings we are unable to agree with him in that contention. Such might have been the case if relator had failed to deny the affirmative allegations of the answer.

In the discussion of the writ of assistance in 2 Ruling Case Law, 739, it is said: "If the petitioner fails to file a replication to an answer setting up a defense, the facts set up by way of defense will be taken as true." To the same effect is 5 C. J. 1325, and numerous cases cited. In this case relator did file a reply to the answer and did deny the allegations and new matter. It follows that the allegations of the answer cannot, therefore, be taken as true, either absolutely or prima facie.

Respondents have apparently misinterpreted the statement of this court in *Beck* v. *Felenzer,* supra. There it said: "The writ will not be allowed to operate against a party who shows, even prima facie, that he has acquired a new and independent right or title, for the writ relates to and operates upon those rights only which have been determined by the judgment. (*Baker* v. *Butte Water Co.,* 40 Mont. 583, 135 Am. St. Rep. 642, 107 Pac. 819.) But to defeat the writ the claim of a new right must be reasonable, and the showing in support thereof

sufficient to invoke the judicial discretion. (*Kirsch* v. *Kirsch,* 113 Cal. 56, 45 Pac. 164; 5 C. J. 1320.)''

Certainly, this court never intended to announce the rule that a mere allegation in a pleading would constitute the requirement mentioned in the last-quoted case. It will be observed that the court there said that the showing in support of the new and independent right must be sufficient to invoke judicial discretion. It is difficult to understand how it could be said that the mere assertion of the right in a pleading could invoke judicial discretion.

To support his assertion of the new and independent right, Ecker did not plead that he had entered into a new contract with relator, but he evidently sought to invoke the provisions of section 9889, Revised Codes of 1921. That section reads in part as follows: ''In all cases of tenancy upon agricultural lands, where the tenant has held over and retained possession for more than sixty days after the expiration of his term without any demand of possession or notice to quit by the landlord, or the successor in estate of his landlord, if any there be, he shall be deemed to be holding by permission of the landlord, or the successor in estate of his landlord, and shall be entitled to hold under the terms of the lease for another full year, and shall not be guilty of an unlawful detainer during said year, and such holding over for the period aforesaid shall be taken and construed as a consent on the part of a tenant to hold for another year.''

Although it appears that Ecker probably did plead sufficient facts to bring himself within this statute, the mere pleading of those facts is not enough to constitute a prima facie showing. The phrase ''prima facie case'' has been so frequently defined that we deem it unnecessary here to enter into a discussion of it. In 6 Words and Phrases, Third Series, p. 87, the following typical definition is given: ''A 'prima facie case' is one in which the evidence in favor of a proposition is sufficient to support a finding in its favor, if all of the evidence to the contrary be disregarded. (*Schallert* v. *Boggs,* (Tex. Civ. App.) 204 S. W. 1061, 1062.)'' This definition is practically identical

with that in Webster's Dictionary. (See, also, 6 Words and Phrases, third series, p. 87, and numerous authorities cited there.)

It is not possible for us to control the discretion or direct the decision of the district court. It was the duty of the court to proceed and hear testimony in support of the allegations. The requirement of a prima facie showing mentioned in *Beck* v. *Felenzer*, supra, could not be satisfied by anything less than that. Ecker should have been required to show prima facie at least that he had a new right. If that course had been pursued and the writ had been denied, this application would, of course, be improper.

In the case of *State ex rel. Brophy* v. *District Court*, 95 Mont. 479, 27 Pac. (2d) 509, 510, this court discussed a similar situation. There the court refused to hear a proper application and struck it out for reasons similar to those assigned here. There we said: "It is, then, manifest that the court was bound to hear the motion upon the merits. It did not do so; instead it made an order dismissing it. The court erroneously decided that, as a matter of law, it had no jurisdiction to hear the motion on the merits, and thus failed to perform a duty imposed by law." (Citing *State ex rel. Musselshell County* v. *District Court*, 89 Mont. 531, 300 Pac. 235, 82 A. L. R. 1158; compare *State ex rel. O'Neil* v. *District Court*, ante, p. 393, 30 Pac. (2d) 815.) Here we say it was the duty of the court to proceed to a hearing upon relator's petition, at least to a sufficient extent to enable it to determine whether Ecker could establish a prima facie defense based upon evidence rather than allegations.

Respondents contend that mandamus will not lie, because it appears that relator has a plain, speedy, and adequate remedy at law. This reasoning would have been sound if the court had heard the matter as presented by the pleadings. (Sec. 9731, Rev. Codes 1921.) But, as we have observed, the court did not do this. It did not act, but refused to act. No discretion was exercised. The matter was not decided. All that the court determined was that it had no jurisdiction to proceed

further. We cannot distinguish this case in that particular from the cases hereinbefore cited.

In *Raleigh* v. *District Court*, 24 Mont. 306, 61 Pac. 991, 993, 81 Am. St. Rep. 431, this court said: "The rule that mandamus will not issue to control discretion or to revise judicial action, but only to direct the court to act in such matter, is to be understood as applying only to the act to be commanded by the writ, and not to the decision of purely preliminary questions of law only. If the rule applied to such preliminary questions, then, to use the language of Mr. Hayne in section 323 of his treatise on New Trials and Appeals, 'no writ of mandamus could ever issue, and the machinery provided by the Code for trying such questions would be useless.' * * * The writ of mandate does 'properly lie in cases where the inferior court refused to take jurisdiction where by law it ought so to do, or where, having obtained jurisdiction in a cause, it refuses to proceed in the due exercise thereof.' " (See, also, *State ex rel. County of Musselshell* v. *District Court*, supra.)

There is no merit in respondents' contention that mandamus does not lie because relator has a remedy by way of an action of unlawful detainer. This court has held that in such a case as this the relator has a remedy by writ of assistance and also by an action of unlawful detainer, that these two remedies are concurrent, and both may be pursued at the same time. (*Beck* v. *Felenzer*, supra.) This being so, and it having been for relator to say which of the two remedies it should pursue, the rule that the writ of mandate does not lie if there be a plain, speedy and adequate remedy at law, does not prevent recourse to this extraordinary remedy to compel action on the part of the trial court in a proceeding for relief under one of the concurrent remedies—the writ of assistance.

It is ordered that a writ of mandate be issued directing the respondent court to proceed to hear evidence for the purpose of determining whether Ecker can make a sufficient showing of his alleged new rights.

Mr. Chief Justice Callaway and Associate Justices Angstman and Matthews concur.