STATE ex Rel. AINSWORTH, Relator, *v.* DISTRICT COURT et al., Respondents.

(No. 7,911.)

(Submitted December 19, 1938. Decided December 22, 1938.)

[86 Pac. (2d) 5.]

*Messrs. Mulroney & Mulroney, Messrs. Murphy & Whitlock* and *Mr. Edwin T. Fritz,* for Relator, submitted a brief; *Mr. W. L. Murphy* and *Mr. Fritz* argued the cause orally.

*Messrs. Booth & Booth* and *Mr. S. C. Ford,* for Respondents, submitted a brief; *Mr. Ford* and *Mr. Ed. Booth, Jr.,* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

At the general election held on November 8, 1938, A. S. Ainsworth and A. A. Alvord were the duly nominated candidates for the office of state senator of Sanders county. The canvass of the votes made by the county canvassing board on November 10 disclosed that Alvord had received 1,353 votes and Ainsworth 1,351 votes. Alvord was therefore entitled to receive a certificate of election. On November 14 Ainsworth filed an application for a recount of the votes under the provisions of sections 828.1 to 828.7, Revised Codes. Alvord filed a motion to strike parts of the application and a motion to dismiss the application as a whole. At the same time, by consent of court and without waiving his rights under the motions, he tendered an answer containing a general denial of

the allegations of the application. The motions were argued orally, and the court made an order dismissing the application for the recount upon the ground that a recount under the sections could not be ordered by reason of a provision of section 9, Article V of our Constitution, which provides that each house of the legislative assembly "shall judge of the elections, returns, and qualifications of its members." Thereupon Ainsworth made application to this court for a writ of mandate to require the district court to take jurisdiction of the application and to proceed under the terms of the above sections, which were Chapter 27 of the Laws of 1935, Twenty-fourth Legislative Assembly.

The first section of the chapter (sec. 828.1) provides that: "Any unsuccessful candidate for any public office at any general election or special election, * * * may within five days after the canvass of the election returns by the board or body charged by law with the duty of canvassing such election returns, apply to the district court of the county in which said election is held, or to any judge thereof, for an order directed to such board to make a recount of the votes cast at such election, in any or all of the election precincts wherein the election was held, * * * ."

The court deemed the application for the recount sufficient as to form and substance and so stated. In a most commendable spirit the court then proceeded to explain that, for the benefit of this court in case the matter reached this tribunal, it was desirable to make plain its reasons for the action and the ruling made. The court ruled that the provisions and benefits of the recount law were not available to Ainsworth by reason of the constitutional provisions already quoted, to the effect that the senate itself is the sole judge of the election returns and qualifications of its members.

It at once becomes clear that the sole question decided by the district court was that the recount statute was not available to candidates for the legislative assembly and, therefore, the court was without jurisdiction to proceed.

The Chapter has been before this court on previous occasions. The provisions were available for the first time after the election of 1936. Shortly after that election the provisions and applicability thereof came under consideration by this court in two cases: *State ex rel. Stone* v. *District Court,* 103 Mont. 515, 63 Pac. (2d) 147, and *State ex rel. Riley* v. *District Court,* 103 Mont. 576, 64 Pac. (2d) 115. In the *Stone Case,* supra, this court called attention to the fact that the sole purpose to be accomplished by a recount under the law was to determine, in a doubtful case, whether the official canvass of the vote was correct. The court stated that the provisions were available to any unsuccessful candidate for any public office at any general or special election. It is obvious that the legislature very plainly declared that the law was available to "any unsuccessful candidate for any public office." There is no doubt about the purpose of the legislative assembly in enacting the law. It only remains to be determined whether the legislature was acting within its proper constitutional limits when it enacted such a sweeping provision—a provision which certainly can only be understood as attempting to include legislative officers—senators and representatives.

Counsel for both sides have filed elaborate and able briefs. These briefs are manifestly the result of careful and exhaustive research. We are inclined to agree with the supreme court of New Mexico in a case cited in one of the briefs. That court had under consideration a recount law somewhat similar to ours. It said: "Our attention has not been called to any statute of any sister state similar to ours, and we have been unable to find any, although we have found recount statutes in several states. Under the circumstances, the decisions from other states, based upon their statutes, are of little, if any, assistance to us in construing our statutes." (*State ex rel. Scott* v. *Helmick,* 35 N. M. 219, 294 Pac. 316, 319.)

Our own research discloses that there are many recount statutes in effect in the different states. While they are similar in form and there are common provisions found therein, yet, as the New Mexico court said, there are no two of them exactly

alike. The recount theory, of course, is invoked in every instance by statutory provision, and each law as a whole and its applicability to specific cases must be construed in the light of the provisions therein found.

We are unable to see wherein a recount by the duly constituted board of canvassers can infringe upon the right of a house of the legislative assembly to judge of the elections, returns and qualifications of its members. It is elementary that courts cannot try contests for seats in the legislature, and decide issues involved in such contests; but the recount statute does not assume to set up any tribunal wherein any such an issue is to be tried. It does not assume to recognize the existence of a contest. Our Code provides the machinery for ordinary election contests involving public offices other than legislative. It has been universally recognized that the courts have no voice in contests involving legislative seats. In the *Stone Case*, supra, we called attention to the fact that the recount statute was not intended as a contest statute. We still adhere to that principle. The *Stone Case* involved the office of sheriff and the qualifications of one of the candidates. This court refused to decide as to the qualifications of the candidate in the recount matter. That matter was a proper subject for court consideration in a separate proceeding. Here the actual contest between these two candidates can only be a subject for senate consideration.

In many of the states the recount statute is so coupled with the subject of contests that the courts have refused to invoke it in legislative contests. Chapter 27, as it appears in the Session Laws of 1935, makes no mention of contests. In the recodification of the statutes made in 1935, the Chapter is given a number and is entitled "Contesting Elections." However, we consider that fact of no particular significance.

Relator Ainsworth argues vehemently that the recount is merely ministerial; he has cited a decision of this court as authority for that statement. In the case of *State ex rel. Riley* v. *District Court*, supra, this court said: "The board in making the canvass [recount under the statute] was acting in a

ministerial capacity.'' The same thing was said by the Oklahoma supreme court in *Whitaker* v. *State ex rel. Pierce,* 58 Okl. 672, 160 Pac. 890, and by the Indiana supreme court in *State ex rel. Lord* v. *Sullivan,* 15 N. E. (2d) 384, not yet reported in State Reports.

It does not seem to us that it is necessary to ascertain with certainty just exactly the nature of the powers of the canvassing board in the premises. The law provides with great particularity just what the board shall do and how it shall do it. The provisions governing the recount of the votes are almost identical with the provisions of the statute governing the original count required to be made by the judges and clerks of election.

The computation of the result of the votes as disclosed by a recount has no more effect upon the final and ultimate right to an office than does the computation originally made by the precinct judges and clerks of election, and by the official canvass thereafter made by the canvassing board. It is true that the judges of election are required to use some discretion and must decide some questions in the course of counting votes. While the duty is ministerial, generally speaking, the judges of election are required to observe the election laws and to that end have excerpts therefrom in their possession. These slight deviations from pure ministerial duties do not render the position judicial in the proper or general sense. Neither do the same discretionary powers, when exercised by the canvassing board, alter the fact that the canvassing board is a ministerial body.

The ascertainment of the result, i. e., the count and the computation of the votes, does not go far enough to impinge upon the constitutional guaranty that each house of the legislative assembly shall be the judges of the elections, returns and qualifications of its members. The election certificate given to a candidate for the state senate does not insure his acceptance as a member of that body. It merely furnishes him with prima facie evidence of the fact that a majority of the voters of his district have voted for him. (*Gervais* v. *Rolfe,* 57 Mont. 209, 187 Pac. 899; 20 C. J. 250, par. 347.) The certificate of elec-

tion does not evidence any adjudication. We tried to make that plain as to the office of sheriff in the Stone Case, supra.

This court has uniformly held that each house of the legislature may judge of the qualifications of those who seek membership, and may decide for itself the question of such right. In this case neither the certificate originally given, nor one which may be hereafter given, can have any binding effect upon the state senate. That body may disregard the certificate, institute and conduct its own investigation and decide for itself who shall be entitled to the seat. We do not believe that the cases cited by respondents go further than to establish that fact. Reliance was placed upon State ex rel. Smith v. District Court, 50 Mont. 134, 145 Pac. 721; State ex rel. Ford v. Cutts, 53 Mont. 300, 163 Pac. 470, and State ex rel. Boulware v. Porter, 55 Mont. 471, 178 Pac. 832. All of these cases go to confirm the right of each house of the legislature to act under the constitutional provisions already mentioned. They do not reach the question under consideration.

We are of the opinion that the district court was in error in deciding that the recount statute was not available to relator. We think that the recount should have been ordered even though it might have no binding effect upon the senate. The law provides for it, and we see no justification for holding that such a provision is unconstitutional.

Respondents have taken the position that mandamus is not the proper remedy in this proceeding. We have already indicated that the recount statutes were properly invoked by the relator in the first instance in the district court. Can the matter be rectified and enforced by writ of mandate? We are of the opinion that the writ of mandate will lie. Having decided that the district court should have entertained the application for a recount and should have proceeded thereunder, it at once becomes evident that the court, having failed to proceed, may be compelled to do so by writ of mandate. In the case of State ex rel. Peel v. District Court, 59 Mont. 505, 197 Pac. 741, it was said: "The writ of mandate may be

issued by this court to any inferior tribunal to compel the performance of an act which the law specially enjoins as a duty resulting from an office. * * * Ordinarily, mandamus will not lie to correct an error of the district court already made; but, in this instance, the court has not acted, but has refused to act; that is, it has refused to hear and act upon the petition * * * for letters of administration." In that case two parties had applied for letters of administration of the estate of a deceased person. The court, upon the representation that one of them was disqualified, struck out his petition. He thereupon applied to this court for a writ of supervisory control. After consideration of the matter the court decided that supervisory control was not the proper remedy, but ordered a writ of mandate to require the court to hear and decide the application of petitioner. To the same effect is *State ex rel. Brophy* v. *District Court*, 95 Mont. 479, 27 Pac. (2d) 509. There it was said, with relation to an application for an order to set aside a decree of distribution: "Mandamus is the proper remedy where the court refuses to perform a duty specially imposed by the statute."

In the case of *State ex rel. Musselshell County* v. *District Court*, 89 Mont. 531, 300 Pac. 235, 82 A. L. R. 1158, this court said in speaking of mandamus: "Among these tests is the well-established rule that mandamus lies to compel action, but not to control discretion. * * * If a court erroneously decides, as a matter of law, that it has no jurisdiction and thus denies a litigant the right to be heard on the merits, and refuses to determine the facts, or to proceed, it has failed to perform a duty imposed by law, and mandamus will lie, unless there is a specific and adequate remedy by appeal, writ of error or other method of review." (See, also, *State ex rel. Goodhue County Nat. Bank* v. *District Court*, 96 Mont. 600, 31 Pac. (2d) 837.)

Here it seems to us that the court, being convinced that the application for the recount was sufficient in form and substance, and having denied it only because it erroneously decided that

it had no jurisdiction to proceed, the remedy by mandamus is the proper one to be invoked.

Let the writ issue.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANDERSON and ANGSTMAN concur.

MR. JUSTICE MORRIS:

I concur in the results of the above opinion by Mr. Justice Stewart, but I think it should be made plain that the constitutional right of the senate, as set forth in section 9 of Article V of the Constitution, to decide controversies such as that involved here, is to be invoked only after the remedies of the general election laws are exhausted and there has been a failure clearly to determine the rights of the parties.