GARRETT FOXWELL *vs.* WILLIAM W. BECK, JESSE
H. USILTON, HARRY CACY, A. PARKS RASIN,
SUPERVISORS OF ELECTION OF KENT
COUNTY, MARYLAND—No. 68, Oct. Term, 1911.

JAMES BRAMBLE *vs.* JOHN P. NICHOLSON, JESSE
H. USILTON, HARRY CACY, A. PARKS RASIN,
SUPERVISORS, ETC.—No. 69, Oct. Term, 1911.

WILLIAM C. TOWNSEND *vs.* CHARLES F. CROW,
JESSE H. USILTON, HARRY CACY, A. PARKS
RASIN, SUPERVISORS, ETC.—No. 70, Oct. Term,
1911.

*Primary Election Law*: *Acts of* 1910, *ch.* 741; *no provision for
contested election*: *Constitution, Art.* 3, *sec.* 47,
*and the Code of Public General Laws.
Art.* 33, *secs.* 127, 128.

The Primary Election Law (Acts 1910, ch. 741) does not give
a defeated candidate (at such an election) the right to con-
test the nomination of the one returned nominated.    p. 3

Sections 160D, 160H and 160K of said act, providing that the
primary elections shall be held, conducted and *determined*
in manner and form according to and subject to all the
regulations and requirements of Article 33 of the Code, in
so far as they may be applied, unless otherwise provided,
refer to the primary *elections,* and not to a *contest* of such
an election after it is over.    p. 4

The contests provided for in the Constitution (Art. 3, sec. 47),
and in sec. 127 of Art. 33 of the Code clearly relate
to contested *elections,* and do not relate to or include a con-

test as to the right to be a candidate for one of the offices therein named at the general election.                    p. 5

The Code, sec. 128 of Art. 33 relates to the same kind of contested elections, as the Constitution and sec. 127 refer to, and hence does not include contests over nominations.    p. 5

A nominee of a political party is not an officer within the meaning of section 128.                    p. 6

The procedure for contested elections provided for in Art. 33 is not such as the legislature would likely have intended to apply to primary elections.                    p. 7

*Decided November 22nd, 1911.*

Three appeals from the Circuit Court for Kent County (PEARCE, C. J., ADKINS and HOPPER, JJ.).

The three causes were argued together before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*George Stewart Brown* and *Hope H. Barroll,* for the appellants.

*S. Scott Beck* and *Lewin W. Wickes,* for the appellees.

*Per curiam orders were filed on October 6th, 1911, affirming the orders appealed from on the general grounds that the Primary Election Law (Ch. 741 of the Acts of 1910) made no provision for contested elections in such cases, and that the provisions of the other sections of Article 33 of the Code did not apply; and on November 22, 1911,—*

BOYD, C. J., delivered the opinion of the Court.

The appellant filed on September 2nd, 1911, a petition for a mandamus requiring and directing the supervisors of elections of Kent county to open the ballot boxes and recount the ballots cast at the late primary election. He and William W. Beck were candidates at the Democratic primaries for the nomination of state senator and by the returns Mr. Beck had a majority of five votes. The Circuit Court for Kent County passed an order on September 4th, 1911, dismissing

that petition, but granted leave to amend the same for further hearing. In this Court counsel for appellant did not rely on their appeal from that order, and, regardless of the main question in the case, there can be no doubt that that petition could not have been granted.

On September 5th, 1911, the appellant amended his petition. The alleged irregularities and errors are in substance those stated in the original petition, but the amended petition prayed that the clerk of the Court be required to produce the ballot boxes and the ballots in his custody in order that the ballots might be counted under the direction and supervision of the Court, and that, if the recount of said ballots showed that petitioner had received a majority of the ballots so cast, the Court would pass an order directing that a mandamus issue against the supervisors requiring them to correct their return as a canvassing board and to print on the ballots for the election to be held November 7th, 1911, the name of the petitioner as the candidate of the Democratic party for State senator.

Without stopping to discuss the form of the petition, we will consider the important question involved—whether or not a candidate for nomination by a political party for the office of State senator can contest in Court the nomination of the one declared by the returns and the supervisors of elections to be the nominee. It can not be said that there are any provisions or expressions in Chapter 741 of the Acts of 1910, known as the Primary Election Law, which *in terms* give a defeated candidate the right to contest the nomination of the one returned nominated. There is no reference anywhere in that act to a contest, no procedure is prescribed, no tribunal provided, no time limited, and in short no method of contest provided. But it was urged at the argument that the Act of 1910 was made a part of Article 33 of the Code, and that the terms used in that act were sufficient to embrace the provisions of Article 33 in reference to contested elections. One of those relied on in section 160H, which provides that "Ballots in all said primary elections shall be cast, except as hereinafter provided for primary elections, in the

several counties of the State, counted and canvassed and the
result of the election announced and certified in Baltimore
City and in each of the counties of the State, as now provided
by the said Article 33 for elections held thereunder; and
the said primary elections shall be held and conducted and
determined in manner and form provided by this article for
general elections, and subject to all the regulations, require-
ments and provisions as prescribed by this article for general
elections, in so far as the same are or may be applicable to
said primary elections and except as may be herein pro-
vided." Similar provisions are in section 160K, and section
160D also provides that such elections shall be conducted
under the control of the supervisors by the judges and clerks
appointed by the supervisors under Article 33, and in the
same manner as far as applicable as general elections are
conducted under that article, except as otherwise provided.

Great stress was laid at the argument upon the expression
"shall be held and conducted *and determined,*" etc., but it
is clear that that refers to what was being provided for—
the primary election and *not a contest* of such an election
after it is over. The Legislature was careful to make sec-
tions 87 to 115, inclusive, of Article 33, in reference to
offenses, applicable to primary elections, and while we do
not mean to intimate that no sections of Article 33 are
applicable excepting those thus in terms referred to, it would
seem to be altogether likely that if it had intended to make
sections 127 to 143, being those having reference to con-
tested elections, applicable to primary elections the Legisla-
ture would have said so.

But an examination of those sections will show that they
could not well be applied to contests over primary elections.
The Constitution provides for contests in reference to Gov-
ernor, Attorney-General, members of each house of the
General Assembly, etc., and directs that "The General
Assembly shall make provisions for all cases of contested
elections of any of the officers not herein provided for." The
Legislature did make certain provisions for contests, and by

what is now section 127 of Article 33 of the Code it provided that "All contested elections for Comptroller of the treasury, judges, clerks of the Courts of law and registers of wills shall be decided by the House of Delegates, and the testimony shall be taken in such cases in the same manner as herein prescribed in the contested seats of the Senate and House of Delegates," and section 128 is: "All cases of contested elections of *any of the officers* not provided in the constitution or in the preceding sections shall be decided by the judges of the several Circuit Courts, each in his respective circuit, and by the Superior Court of Baltimore City in the City of Baltimore."

The latter section (128) is the only one in Article 33, providing for contested elections, which could possibly be claimed to have any application to this case, but it is manifest from the language used in it that it referred to such contests as the constitution and the preceding section referred to. It could not be contended that a contested election provided for either in the constitution or in the preceding section (127) included a contest for a nomination for such office. If, for example, there is a contested election for clerk of the Court before the House of Delegates, the contest is not, and could not be, between one of the contestants and his opponent for nomination, but it is between him and the other person who was a candidate for the office at the general election. If that be not so, then the appellant would clearly be out of Court, because under the constitution each House of the General Assembly is the judge of the qualifications and elections of its members, and he would have no standing in Court, but would have to submit the question to the Senate. It is clear then that the contested elections of officers provided for by the constitution and section 127 are elections at which the offices included are to be filled, and have no applications to contests concerning the right to be candidates for such offices at a general election. That being so, the provision in section 128 in reference to contested elections

must mean the same kind of contested elections as those pro-
vided for in the constitution and section 127—namely, elec-
tions for offices and not for nominations. Under the consti-
tution and under section 127 contested elections for certain
offices are to be determined by the tribunals named in them,
while those for offices not provided for by the constitution or
that section are to be decided by the Courts named in sec-
tion 128, and unless you give a different meaning to "con-
tested elections" in section 128 from that in section 127 it
must apply to contests over offices and not over nominations.
  In order to hold that the terms used in section 128 are
broad enough to include primary elections for nominations
to offices it would have to be said that the nominee of a politi-
cal party is an officer within its meaning. Then we would
have this peculiar condition of affairs; a candidate for nomi-
nation for State Senator would be an officer embraced by
section 128, and entitled to have his contest for the nomina-
tion heard by the Court, and if that be decided in his favor
and there be a contest over his election, it would under the
constitution have to be before the Senate. In other words,
the same person in his effort to become State Senator would,
according to the appellant's contention, be a contestant for
two offices—one as a nominee of his party, a contest over
which must be decided by the Court, and the other as a
candidate for the office of State Senator, a contest over which
must be determined by the Senate. It can not be properly
said that a nominee of a political party is an officer, or that a
candidate for such nominee is a candidate for an office within
the meaning of section 128.

  It would certainly require an exceedingly liberal con-
struction of the language "all cases of contested elections of
any of the officers" to apply it to primary elections for State
officers elected by the voters of the whole State. Under sec-
tion 160K of the Act of 1910, the voters indicate their choice
for nomination of such officers as Governor, Comptroller,
etc., on the ballot, and can also vote for delegates to the State

convention, but the delegates are required to cast the vote of
their respective counties or legislative districts, if of Balti-
more City, according to the result of the votes cast for the
candidates. It might be that there was but one set of dele-
gates at the primaries, or that some of the delegates named
in the interest of one candidate were selected, although the
other candidate received the highest vote in the county or
legislative district, and hence there might be no question
about the election of the delegates. If a candidate for the
nomination for Governor, for example, desired to make a
contest, such contest might extend over a number of coun-
ties and some legislative districts of Baltimore, and it might
be that no two of the counties were in the same judicial cir-
cuit. Three or four, or more, judges might thus be called
upon to hear part of a contest, but neither could possibly
do more than decide the part in the county or legislative dis-
trict in his jurisdiction, and of course neither one nor all
could decide which of the candidates was nominated. The
contested elections spoken of in sections 127 and 128 were
intended to be of a character that the House of Delegates or
the Court, as the case may be, could decide which was elected,
or at least that the one so returned was not elected. It was
never contemplated by section 128 that one judge should sim-
ply decide who had carried a county in his circuit, and
another which candidate had carried a county or legislative
district in his jurisdiction. So it seems to us that the legisla-
ture can not be said to have supposed that that section would
apply to such State offices, and as there is no other provi-
sion in Article 33 which does, it is not reasonable to suppose
that it intended that section to apply to all officers except
those to be elected by the voters of the State at large, and
then make no provision for them.

But still another important reason why section 128 should
not be construed to include primary elections, in the absence
of a clear legislative intent to make it so, may be given. It
must be borne in mind that the only methods of procedure
provided by the legislature are to be found in sections 127

to 143, inclusive. We have already quoted sections 127 and 128. Section 129, after authorizing the courts to adopt modes of proceeding and to adjudge costs in contested elections before them, goes on to say, "but the rules of taking testimony in such cases shall be the same as those which regulate the taking of testimony in contested election cases cognizable by the House of Delegates." Then section 131 provides that the party intending to contest an election for the Senate or House of Delegates shall give notice of such intention "within thirty days after the judges of election shall have made known publicly the state of the polls," unless at a special election to fill a vacancy, when only ten days are allowed. After the notice of contest, the contestant must, by section 133, apply to a justice of the peace and obtain a notice requiring the opposite party to attend the examination of witnesses, and by section 135 that notice must be served at least ten days previous to the proposed examination of witnesses. The testimony has to be reduced to writing, and section 138 provides that "The examination of witnesses, taken in the manner herein prescribed and in no other, shall hereafter be admitted on trial of contested elections."

In the absence of a statute fixing a shorter time within which the notice of the contest must be given, it would seem that if the provisions of Article 33 in reference to contested elections are applicable to primary elections, the contestant could give the notice of contest at any time within thirty days, then the notice of the justice of the peace must be not less than ten days—thus allowing at least forty days before beginning the testimony. Then after the testimony is completed, which generally would require considerable time, and the case determined by the Court, an appeal can be taken, within five days from the date of the decision, to this Court. If contestants choose to take the full time allowed under those provisions, it would be practically impossible in most cases to have decisions by this Court in less than something like two months after the primary elections, even if it was in

session when the record reached it. As the primary election law authorizes the primaries to be held as late as the first Monday of September, a case might easily be continued beyond the time allowed the supervisors of election to have the ballots printed.

It was said in *Warfield* v. *Latrobe,* 46 Md. 123, by JUDGE ROBINSON, in denying the right of appeal as the law then stood: "Independent of the rights of the contestants, the public interests require there should be an early and final decision in cases of this kind. And if the right of appeal is to be exercised, and the case is to be remanded for error of the Court below, with the right to either party to appeal again, it would not be a difficult matter to protract the contest until the term of office had expired." We always advance such cases on application and determine them as speedily as our other duties will permit, but if the provisions of Article 33, in reference to contested elections, must be held to be applicable to primary elections, it is easy to see that a contest for a nomination might result in postponing a proper decision of the case until it would be too late for the one returned nominated to have the benefit of what the primary election law clearly intended, when it required the primaries to be held not later than the first Monday in September, although the contest be ultimately decided in his favor.

If it be deemed proper to provide for such contests, some different method of procedure than that now in Article 33 of the Code must be adopted, and we are of the opinion that it not only does not apply, but that it could not without the risk of great injustice to successful candidates for nomination to offices. If by experience it be found necessary to adopt some method of procedure for a recount or contest, in order to protect candidates for nominations against fraud, beyond what the statutes against criminal offences afford, some less cumbersome and more expeditious plan than that now in Article 33 will doubtless be provided.

Without giving other reasons, these are sufficient to indicate why we passed the *per curiam* order heretofore filed in this case, by which we affirmed the orders appealed from.

> *Orders affirmed, the costs to be paid by the appellant.*