STATE EX REL. SMITH, RELATOR, *v.* DISTRICT COURT ET
AL., RESPONDENTS.

(No. 3,595.)

(Submitted December 14, 1914.  Decided December 18, 1914.)

[145 Pac. 721.]

*Elections—Members of Legislature—Contests—How Determined
—Constitution—Departments of Government—Initiative and
Referendum—Statutes.*

Effect of Statute Initiated by Electors.
   1.  An Act initiated by the people has no greater efficacy than one
   enacted by the legislature, in so far as its constitutionality is concerned.
Constitution—Nature of Instrument.
   2.  Speaking generally, the state Constitution is a limitation, not a
   grant of powers.

   [As to self-executing provisions of the Constitution, see note in Ann.
   Cas. 1914C, 1116.]

Same—Legislature—Election Contests—How Determined.
   3.  The provision of section 9, Article V of the state Constitution that
   each house of the legislative assembly shall judge of the elections,
   qualifications, *etc.,* of its members, is a power granted by the people
   which cannot be delegated by either or both acting together.  Neither
   house can divest itself of the power conferred upon it, and no person,
   officer or court can infringe upon the exclusive privilege granted.
Same—Judicial Department—Infringement by Legislature.
   4.  *Held,* that since the requirement of section 49 of the Corrupt Prac-
   tices Act (Laws 1913, p. 613), making it incumbent upon the district
   court in the case of a contest of the election of a state senator or repre-
   sentative, to hear the evidence and make findings to be transmitted to
   the secretary of state and by him delivered to the presiding officer
   of the senate or house, constitutes the judge of such court a mere agent
   of the legislature for the purpose of gathering evidence and making find-
   ings which have no binding force—a duty which, being nonjudicial in
   character, cannot be imposed upon judges—such provision is invalid.
Pleadings—When not Amendable.
   5.  A pleading which in legal effect is a nullity is incapable of
   amendment.
Election Contests—Statement—Untimely Filing—Effect.
   6.  A statement of contest, involving the office of state senator, not filed
   within twenty days after a certificate of election had been issued to the
   contestee (Rev. Codes, sec. 83), was ineffective for any purpose, and
   the clerk of the district court was therefore not required to issue a
   commission to two justices of the county to take the depositions of the
   witnesses who might be called by the parties.
Same—Members of Legislature—Statutes..
   7.  While failure on the part of a contestant to file his statement of
   contest within the twenty-day period precludes him from having deposi-
   tions taken as provided in sections 84 to 87, Revised Codes, it does not
   deprive him of the right to have the contest heard under the power
   conferred upon both houses of the legislature by section 9 of Article V
   of the Constitution.

Original application by the State on the relation of Charles W. Smith, for writ of *certiorari,* to review an order of the District Court of the Fourteenth Judicial District in and for the County of Broadwater and John A. Matthews, Judge thereof; refusing a writ of mandate. Dismissed.

*Mr. Gael G. Wilson,* for Relator.

*Mr. O. W. McConnell* and *Mr. R. Lee Word,* for Respondents.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

At the general election held on November 3, 1914, Charles W. Smith was the Republican candidate, and Charles S. Muffly was the Democratic candidate, for state senator for Broadwater county. The canvassing board returned that Muffly received the highest number of votes, and a certificate of election was issued to him on November 6. On November 25 Smith commenced an action in the district court of Broadwater county contesting Muffly's election. On December 3 the contestant secured leave of the court to amend his petition or complaint by striking therefrom:

"In the District Court of the Fourteenth Judicial District of the State of Montana, in and for the County of Broadwater.

"Charles W. Smith,

Contestant,

v.

Charles S. Muffly,

Contestee.

"PETITION.

"To the Honorable John A. Matthews, Judge of the District Court of the Fourteenth Judicial District of the State of Montana in and for the County of Broadwater:

"The petition of contestant, above named, alleges."

—and substitute therefor the following:

"In the Matter of the Contest of Election of Charles S. Muffly
   to the Office of Senator for the County of Broadwater, State
   of Montana.

"Charles W. Smith,
                Contestant,

     v.

Charles S. Muffly,
                Contestee.

### "STATEMENT OF CONTEST.

"Charles W. Smith, contestant, presents and files this his
statement of contest and alleges"—and by striking out the
prayer that the court determine that Muffly was not elected and
that contestant was, that a citation issue to Muffly requiring him
to appear and answer, and that the ballots used at the election
in precincts 1 to 13 be produced in court and counted, and that
a certificate of election be ordered to issue to contestant, and
to substitute therefor:

"Wherefore contestant prays that the clerk of the district
court of the fourteenth judicial district of the state of Montana,
in and for the county of Broadwater, issue a commission directed
to two justices of the peace of said county to meet at a time and
place specified in such commission, in accordance with law, for
the purpose of taking the depositions of such witnesses as the
above-named parties to the above-entitled contest may wish to
examine, and that such other proceedings may be had for the
determination of said contest as are authorized by law and by
the statutes of the state of Montana." On the same day a paper
designated "Statement of Contest" was filed with the clerk of
the court, and application made for a commission to two justices
of the peace to take testimony. The clerk having refused to
issue the commission, proceedings in *mandamus* were instituted
in the district court to compel the performance of that duty.
The court refused to issue the writ, and this proceeding in *cer-
tiorari* was instituted to review the court's action. Upon the
return, counsel for the respondent interposed a demurrer and

a motion to quash, and the matter is before us for determination upon the complete record of all prior proceedings. Technically, all of these proceedings were not before the district court, and it is urged are not now before us. But nothing is before us which we would not have required upon a hearing upon the merits, and nothing has been excluded which could have come before us properly. We shall therefore disregard the technical objection made, and consider the record as a whole.

Sections 48, 49, 52 and 53 of an Act approved at the general election in 1912 (Laws 1913, pp. 612, 613), under the initiative power reserved to the people by our state Constitution, and familiarly known as the Corrupt Practices Act, provide for contesting nominations or elections by actions in the district courts. Section 49, among other things, declares: "In the case of a contested nomination or election for senator or representative in the legislative assembly, * *. * the court shall forthwith certify its findings to the secretary of state to be by him transmitted to the presiding officer of the body in question." Article VI, Part III, Title I, Revised Codes (secs. 82–92), provides methods for securing and perpetuating testimony in a contest of an election of a member of either house of the legislative assembly. The first method requires, as a condition precedent, that within twenty days after the certificate of election has been issued a statement of contest shall be filed with the clerk of the district court of the county where the contest arises, whereupon the clerk must issue a commission to two justices of the peace of his county, who shall take the depositions of the witnesses produced by either the contestant or contestee, report the same to the clerk, who shall forward the evidence to the secretary of state, by him to be transmitted to the presiding officer of that branch of the legislature before which the contest is to be tried. The second method (section 91) provides for depositions to be taken in the manner and under the rules applicable in civil cases; and section 92 provides: "The house before which the contest is pending may take such other evidence in the case as it deems material."

While the Corrupt Practices Act is in force by virtue of a vote of the people, it has no greater efficacy as a statute than [1] if it had been enacted by the legislature; in other words, it cannot affect any provision of the Constitution. If by this Act it was sought to confer upon a district court power to decide which of two legislative candidates has been elected, it is to that extent, and for that reason, invalid. Section 9, Article V, of our state Constitution provides: "Each house (of the legislative assembly) shall  *  *  *  judge of the elections, returns, and qualifications of its members." A like provision is found in the Constitution of the United States and in the Constitution of every state in the Union, so far as we know. Speaking generally, [2, 3] our state Constitution is a limitation of powers, but the provision in section 9 above is an exception to that rule. This is a distinct grant of power by the people to each branch of the legislative assembly, a power necessary to the existence and independence of each house as an instrumentality of government. This power, emanating from the sovereign people, cannot be delegated by either house or both acting together; and likewise neither house possesses the power to divest itself of the authority thus conferred upon it. (*O'Neill* v. *Yellowstone Irr. Dist.*, 44 Mont. 492, 121 Pac. 283; *State* v. *Holland*, 37 Mont. 393, 96 Pac. 719.) So long as our Constitution stands as it is now written, no officer, individual, court or other tribunal can infringe upon the exclusive prerogative of each house to determine for itself whether one who presents himself for membership is entitled to a seat.

In considering a like provision of the Constitution of Kansas, Mr. Justice Brewer said, "The Constitution declares (Art. II, sec. 8) that: 'Each house shall be judge of the elections, returns, and qualifications of its own members.' This is a grant of power, and constitutes each house the ultimate tribunal as to the qualifications of its own members. The two houses acting conjointly do not decide. Each house acts for itself, and by itself, and from its decision there is no appeal, not even to the two houses. And this power is not exhausted when once it has been

exercised, and a member admitted to his seat. It is a continuous power, and runs through the entire term. At any time, and at all times during the term of office, each house is empowered to pass upon the present qualifications of its own members. By section 5 of the same article acceptance of a federal office vacates a member's seat. He ceases to be qualified, and of this the house is the judge. If it ousts a member on the claim that he has accepted a federal office, no court or other tribunal can reinstate him. If it refuses to oust a member, his seat is beyond judicial challenge. This grant of power is, in its very nature (and so as to any other disqualification) exclusive, and it is necessary to preserve the entire independence of the two houses. Being a power exclusively vested in it, it cannot be granted away or transferred to any other tribunal or officer." (*State ex rel.* v. *John S. Gilmore,* 20 Kan. 551, 27 Am. Rep. 189.)

But section 49 of the Corrupt Practices Act probably does not [4] attempt to confer upon the court power to determine the relative rights of legislative contestants to office. It requires only that the court make findings which are to be transmitted to the secretary of state, to be by him delivered to the house which tries the contest. If the findings made by the court pursuant to this section could, under any possible set of circumstances, become binding, the power thus attempted to be conferred upon the court would be in its nature judicial, and no valid objection could be urged against the legislation. But the constitutional injunction to each house to determine the elections, returns and qualifications of its own members—which is mandatory and prohibitory in its character—precludes the possibility that the court's findings can ever have any binding force or effect. The function performed by the court is nothing more than that of an agent of the legislature—just such a function as might be performed by a referee or notary public. Under our Constitution the powers of government are distributed among the legislative, executive, and judicial departments, which are declared to be distinct and are co-ordinate, and "no person or collection of persons charged with the exercise of powers prop-

erly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this Constitution expressly directed or permitted." (Art. IV, sec. 1.)

In *State ex rel. Schneider* v. *Cunningham*, 39 Mont. 165, 101 Pac. 962, we said with reference to this provision: "Its purpose is to constitute each department an exclusive trustee of the power vested in it, accountable to the people alone for its faithful exercise, so that each may act as a check upon the other, and thus may be prevented the tyranny and oppression which would be the inevitable result of a lodgment of all power in the hands of one body. It is incumbent upon each department to assert and exercise all its power whenever public necessity requires it to do so; otherwise it is recreant to the trust reposed in it by the people. It is equally incumbent upon it to refrain from asserting a power that does not belong to it, for this is equally a violation of the people's confidence. Indeed, the distinction goes so far as to require each department to refrain from in any way impeding the exercise of the proper functions belonging to either of the other departments."

The jurisdiction of the district court is defined and limited by section 11, Article VIII, of the Constitution. Every power therein enumerated is judicial in character; and that the law-making branch of government cannot compel a court to act as its agent, or the agent of either house of the legislature, merely to gather evidence and make findings therefrom which have no binding force or effect, or for any other purpose, follows from the very character of the judiciary as an independent, co-ordinate branch of government. The provision of section 49 of the Corrupt Practices Act above quoted is invalid for this reason, and the contest proceeding instituted in the district court of Broadwater county on November 25 was a nullity, and the **[5]** complaint or petition was of no more effect than a piece of blank paper, and therefore was not the subject of amendment.

It is idle to suggest that contestant intended his original petition, filed in court on November 25, to constitute a statement

of contest under the Code provisions above. It was filed in court, entitled in court, and appealed to the court for relief. [6] The paper filed on December 3 meets the requirements of section 83, Revised Codes, but it was not filed within twenty days after the certificate of election had been issued to the contestee, and for that reason was not effective for any purpose (15 Cyc. 400), and did not call for any action on the part of the clerk.

It may be observed in passing that the method of instituting a contest provided by sections 82 *et seq.,* above, is not exclusive. Those provisions merely contemplate a convenient method of [7]  securing speedily the testimony of witnesses who might, by leaving the state, avoid service of process.   The power conferred by section 9, Article V, of the Constitution, above, is a continuing one, and may be exercised at any time during the term of the member.   The rights of a contestant are not abridged in any respect, then, by his failure to commence his proceedings within the twenty-day period designated in section 83, above.   Such failure operates only to preclude him from having depositions taken in the manner and at the time provided in section 84 to 87, but leaves him every other facility for a hearing.

Because the proceeding instituted on November 25 was ineffectual, and the proceeding commenced on December 3 was too late, this relator is not entitled to any relief in this court. The demurrer and motion to quash are sustained, and the proceeding is dismissed.

*Dismissed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.