PATRICK J. DUFFY *v.* MARY CONAWAY

[No. 112, September Term, 1982.]

\* \* \*

PATRICK J. DUFFY *v.* MARY
CONAWAY ET AL.

[No. 113, September Term, 1982.]

\* \* \*

PATRICK J. DUFFY *v.* STATE
ADMINISTRATIVE BOARD OF ELECTION
LAWS ET AL.

[No. 114, September Term, 1982.]

*Per Curiam Order filed October 29, 1982.*

*Opinion filed January 21, 1983.*

The causes were argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

*Paul Mark Sandler,* with whom were *Raymond Daniel Burke* and *Freishtat & Sandler* on the brief, for appellant.

*George A. Nilson,* with whom were *David Clarke, Jr., David E. Sloan* and *Howard Nicholson* on the brief, for appellee Mary Conaway. *Robert A. Zarnoch, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General,* and *Diana G. Motz, Assistant Attorney General,* on the brief, for appellees State Administrative Board of Election Laws et al.

ELDRIDGE, J., delivered the opinion of the Court.

## PER CURIAM ORDER

For reasons to be stated in an opinion to be filed later, it is this 29th day of October, 1982,

ORDERED, by the Court of Appeals of Maryland, that the orders of the Superior Court of Baltimore City dated October 26, 1982, (Thomas, J.) in actions, respectively, for a declaratory judgment and for a writ of mandamus, both declining to strike the name of Mary Conaway from the ballot for the General Election for Register of Wills in Baltimore City, scheduled for November 2, 1982, are hereby affirmed; and it is further

ORDERED that the order of the Superior Court of Baltimore City (Rasin, J.) dated October 26, 1982, pertaining to the petition of Patrick J. Duffy, filed pursuant to Maryland Code (1957, 1978 Repl. Vol.) Article 33, § 26-18, be, and it is hereby, vacated for lack of jurisdiction in the trial court, and the case is remanded to that Court with directions that the petition be dismissed; and it is further

ORDERED that the mandate shall issue forthwith, costs in each case to be paid by Patrick J. Duffy.

Patrick J. Duffy, until recently, had been the Register of Wills for Baltimore City. In a bid for reelection, he was

defeated in the Democratic Primary Election of September 14, 1982, by Mary Conaway. After the primary election but before the general election of November 2, 1982, Mr. Duffy brought three civil actions which were designed to have Mrs. Conaway's name removed from the ballot at the general election. The basis for the relief sought was Mr. Duffy's claim that Mrs. Conaway had engaged in an unlawful campaign practice, namely offering gifts to induce persons to vote for her. In two of the civil actions, the relief sought was denied. In the third and principal action, the jury made certain findings regarding the allegations, and the court ordered that the findings be transmitted to the State Administrative Board of Election Laws and that the Board immediately transmit the findings to the Speaker of the House of Delegates of Maryland. Appeals were taken in all three cases, and, prior to any proceedings in the Court of Special Appeals, this Court issued a writ of certiorari. On October 29, 1982, after briefing and oral argument, we filed a *per curiam* order, affirming the two judgments which had denied any relief. We vacated the order in the third case and directed that the action be dismissed for lack of jurisdiction in the trial court. We shall now give the reasons for our *per curiam* order.

I.

Before setting out in detail the facts of the cases, it would be useful to review the relevant statutory background. The "Fair Election Practices" subtitle of the Election Code, also known as the "Corrupt Practices Act," Maryland Code (1957, 1976 Repl. Vol.), Art. 33, §§ 26-1 through 26-21, was first enacted in 1908, Ch. 122 of the Acts of 1908. The Act was a response to "the enormous corruption funds contributed by insurance companies and corporations for carrying elections ... [and] bribe-giving, vote-selling, and corrupt methods in both primary and general elections." Message of Edwin Warfield, Governor of Maryland, to the General Assembly, January 1906, at 7-8.

One of the prohibitions in the Corrupt Practices Act is the giving or offering of any money, gift, etc. for the purpose of inducing a person to vote for or against any person or proposition. That prohibition states in pertinent part:

"§ 26-16. Offenses constituting prohibited practices.

(a) *Enumerated.* — The following persons shall be guilty of prohibited practices and shall be punished in accordance with the provisions of this section:

(1) Offering Bribe, etc. Every person who shall, directly or indirectly, by himself or by another, give or offer or promise to any person any money, gift, advantage, preferment, aid, emolument or any valuable thing whatever, for the purpose of inducing or procuring any person to vote, or refrain from voting, for or against any person, or for or against any measure or proposition at any election or political convention or for or against the election of any officer by the General Assembly of Maryland." [1]

There are several enforcement provisions in the Corrupt Practices Act. For example, § 26-20 states that any person who violates the Act is guilty of a misdemeanor and, upon conviction, shall be fined not more than $1,000.00 or imprisoned for not more than one year, or both. Section 26-21 provides that the Secretary of State may seek an injunction against any violation of the Act's provisions. Under § 26-16 (b), violations of the prohibitions in § 26-16 are subject to criminal penalties of a $1,000.00 fine and/or one year imprisonment, and, in addition, the person convicted "shall

---

1. The Maryland Constitution in Art. I, § 6, also prohibits the giving or offering of a bribe, etc., to induce a voter to vote for a particular candidate. Art. I, § 6, goes on to provide that anyone *convicted* of such conduct shall "be forever disqualified to hold any office of profit or trust."

Code (1957, 1982 Repl. Vol.), Art. 27, § 28, states that one convicted of giving a gift or reward to secure a person's vote shall, in addition to the penalties prescribed by the Constitution, be subject to a fine not exceeding $500.00 and imprisonment not exceeding six months.

be ineligible for any public or party office, for the period of four years from and after the time of the commission of such offense." [2] Other sanctions for specific violations are set forth in the Act.

In addition to the enforcement mechanisms mentioned above, the Corrupt Practices Act provides for a civil remedy in § 26-18. It is this remedy which Mr. Duffy sought to invoke in the principal case before us. Under § 26-18 (a), a defeated candidate at any primary or general election or any ten qualified voters may file a petition in court, claiming that practices contrary to the Election Code were committed by the successful candidate or his agents and "praying that the fact alleged may be inquired into." [3] Section 26-18 (b) requires notice to and an answer by the defendant, and § 26-18 (c) permits any party to elect a jury trial.

---

**2.** As previously mentioned, the Act's prohibition against buying votes is contained in § 26-16, and therefore it is presumably subject to the criminal penalty and four-year disqualification provision upon conviction which is set forth in § 26-16(b). *See also* § 26-18 (g) (four-year disqualification provision, under certain circumstances, after non-criminal proceedings). This case does not involve a criminal conviction. Moreover, our *per curiam* order went no further than a holding that the trial court in this case lacked jurisdiction under § 26-18. Thus no issues are presented concerning the relationship between §§ 26-16 (b) and 26-18 (g), as applied to buying votes, and the provisions of Art. I, § 6, of the Constitution and Art. 27, § 28, of the Code.

**3.** Section 26-18 (a) during the period of time relevant in these cases, provided:

"§ 26-18. Procedure on petition.

(a) *Petition.* — At any time within thirty days after any regular primary or general election and within fifteen days of any special primary or special election held under the laws of this State, any defeated candidate at such election, or any ten duly qualified voters at such election, may present to the circuit court of any county, or to the Superior Court of Baltimore City, a petition setting forth under oath that prohibited practices, contrary to the provisions of a specified section or sections of this article, were committed by the successful candidate or candidates or in the person of his or their agent or agents at or preliminary to such election, within the county or city in which said petition was filed, naming the successful candidate or candidates as defendants, and praying that the fact alleged may be inquired into."

Effective January 1, 1983, § 26-18 (a) was amended to delete the phrase "or to the Superior Court of Baltimore City." *See* Code (1957, 1976 Repl. Vol., 1982 Cum. Supp.), Art. 33, § 26-18 (a) The change was in accordance with

Subsection (d) of § 26-18 sets forth a special procedure if the petition relates to the election of certain specified offices, including the office of Register of Wills. Under (d), the trial court is deprived of "power to declare any such election to be void." Instead, the judge is required to file his finding, or in the case of a jury trial the jury's finding, as to whether or not the successful candidate or his agents engaged in an unlawful practice, together with a transcript of the evidence, with the State Administrative Board of Election Laws. The Board is then required to submit the finding and transcript to different persons or governmental bodies depending upon the office involved. With regard to the office of Register of Wills, the Board is directed to submit the finding and transcript to the Speaker of the House of Delegates of Maryland. Section 26-18 (d) thus provides:

"(d) *Judge to file findings with State Administrative Board of Election Laws; duty of Board.* — In case such petition relates to the election of electors of President and Vice-President of the United States, a Senator of the United States, a Representative in Congress, or the Governor and Lieutenant Governor or Attorney General, or a Senator or Delegate to the General Assembly of Maryland, or a judge, or a clerk of a court of law, or a register of wills, or a State's attorney, the trial judge or judges shall have no power to declare any such election to be void. The judge shall file his findings, or, in a case where a jury shall have been demanded, the finding or verdict of such jury as to whether or not the successful candidate, or his agent or agents acting for or on behalf of such candidate, engaged in prohibited practices, with the State Administrative Board of Election Laws together with the transcript of the evidence. The State Administrative Board of Election Laws shall thereupon submit the same to

the constitutional amendment effective January 1, 1983, abolishing the Superior Court, as well as the other courts comprising the Supreme Bench of Baltimore, and creating in their place a single circuit court as the trial court of general jurisdiction in Baltimore City. *See* Ch. 523 of the Acts of 1980.

the Governor of Maryland, when the election is for electors of President or Vice-President of the United States, or for Attorney General of the State; or when the election is for a Representative or Representatives in Congress, shall submit the same certified under the seal of the State, to the Speaker of the House of Representatives; or when the election is for Senator of the United States, shall submit the same, certified under the seal of the State, to the President of the Senate of the United States; or when the election is for a member of the State Senate, shall submit the same to the President of the Senate of Maryland; or when the election is for Governor and Lieutenant Governor or Delegate to the House of Delegates of the General Assembly of Maryland, or a judge, or a clerk of a court of law, or a register of wills, to the Speaker of the House of Delegates of Maryland; or when the election is for a State's attorney, to the judges having criminal jurisdiction of the county and city wherein he shall be elected."

It should be noted that the elections listed in subsection (d) are ones with respect to which either federal or state constitutional provisions or statutes grant to specified governmental entities the authority to judge the elections or the qualifications of those persons elected. Art. IV, § 12, of the Maryland Constitution provides that the Maryland House of Delegates shall judge contested elections for registers of wills.[4]

---

4. Art. IV, § 12, states:

"Section 12. Contested elections for judges, clerks and registers of wills.

In case of any contested election for Judges, Clerks of the Courts of Law, and Registers of Wills, the Governor shall send the returns to the House of Delegates, which shall judge of the election and qualification of the candidates at such election; and if the judgment shall be against the one who has been returned elected, or the one who has been commissioned by the Governor, the House of Delegates shall order a new election within thirty days.

250

Subsections (e) and (f) of § 26-18 relate to elections for offices other than those referred to in subsection (d). Under those subsections the findings of the court regarding such other election, plus the *decision* of the court as to whether the election was void, is to be filed with the Governor instead of with the State Administrative Board of Election Laws. Section 26-18 (f) goes on to provide for a proclamation by the Governor declaring such election void.[5] The next and final paragraph of § 26-18, subsection (g), states that if a candidate "shall have been so found or decided to have engaged in any prohibited practice," he shall be ineligible for public office or employment, unless the prohibited practice was by an agent and without the candidate's knowledge or consent.[6]

---

**5.** Section 26-18 (e) and (f) state as follows:

"(e) *Findings and decision of court to be filed with Governor in certain cases.* — In case such petition relates to any other office than those above referred to, such case shall be heard by a judge or an uneven number of judges, who shall file immediately with the Governor his or their decision or the finding or verdict of the jury in cases where there has been a jury trial, as to whether or not the successful candidate, or his agent or agents acting for or in his behalf, engaged in any prohibited practice. Said trial judge or judges shall also file with the Governor his or their decision, and as to whether or not, upon the findings in such case, such election was void as hereinafter provided.

(f) *Void elections.* — In case the decision or finding filed with the Governor under the provisions of subsection (e) above shall be that any successful candidate so petitioned against in person, or in the person of his agent or agents acting for or in his behalf, engaged in prohibited practices, such election shall be void, except as hereinafter provided, and in case of such void election the Governor shall, within five days after the receipt of such decision, issue his proclamation declaring such election void, and the vacancy in the office to have been filled by said election shall be filled in the same manner as would be required by law in case said vacancy had arisen from the death of the successful candidate after his election."

**6.** Section 26-18 (g) provides:

"(g) *Effect of violation upon candidate.* — If any candidate shall have been so found or decided to have engaged in any prohibited practice, he shall be ineligible to election or appointment to any public office or employment for the period of four years from the date of said election. A finding or decision that a successful candidate engaged in prohibited practices only in the person of his agent without the knowledge or consent of the candidate, and that no prohibited practice was committed without his sanction or connivance, then the election of such candidate shall not be void, nor shall the candidate be subject to any ineligibility therefor."

## II.

Turning to the facts of these cases, the litigation commenced when Mr. Duffy on October 13, 1982, filed in the Superior Court of Baltimore City a petition under § 26-18, naming Mrs. Conaway as the sole defendant. Mr. Duffy alleged that at various times prior to the Democratic Primary Election in Baltimore City on September 14, 1982, Mrs. Conaway and/or her agents gave away 50 smoke detectors, 1,000 loaves of bread, 1,000 sticks of margarine, and 1,000 pounds of chicken. It was further alleged that the purpose of the gifts was to induce the recipients and others to vote for Mrs. Conaway at the September 14th primary election. Mr. Duffy claimed that the acts violated Art. 33, § 26-16 (a) (1). The relief prayed was that the findings of the court with respect to the allegations be transmitted to the State Administrative Board of Election Laws and then to the Speaker of the Maryland House of Delegates as provided in § 26-18 (d), that Mrs. Conaway be declared to have committed practices prohibited by the Corrupt Practices Act, that Mrs. Conaway be declared ineligible for any public office or employment for a period of four years from the date of the primary election, that the court "order the appropriate authority to strike" Mrs. Conaway's name from the ballot in the upcoming general election and "to list only" Mr. Duffy as the candidate of the Democratic Party, and that Mr. Duffy be declared "the valid winner" of the primary election.

The case was tried before a jury, and, after all of the evidence was introduced, the trial judge submitted three questions to the jury. The three questions and the jury's answers were as follows:

---

Although not important in the instant case, it should be noted that the second sentence in subsection (g), concerning the actions of a candidate's agent, has contradictory phrases. For the sentence to be logical, the word "without," the second time it is used, should be "with." This apparent error arose during the reenactment of the statute by Ch. 613 of the Acts of 1968, when the clause "and that no corrupt practice was committed by the candidate personally and the offense was committed without his sanction or connivance" was consolidated.

"1. Did Mary Conaway directly give or offer or promise to any person any gift, aid or any valuable thing whatever, as claimed by Petitioner, during the course of the campaign prior to the Primary Election of 1982.

Answer Yes or No      <u>Yes</u>

2. If your answer to question No. 1 was "No.", did Mary Conaway make such a gift, offer or promise, not herself but through an agent or agents who were acting for or on her behalf with her knowledge and consent?

Answer Yes or No      <u>No</u>

3. If your answer to either preceding question was "Yes", was it Mary Conaway's purpose to induce or procure any person receiving or benefitting from the item to vote for her?

Answer Yes or No      <u>Yes</u>

James M. Woody, Jr.
Jury Foreman"

The jury's findings were rendered on October 23, 1982. Three days later, on October 26th, the trial court issued a written order directing the clerk of the court to transmit the jury's findings to the State Administrative Board of Election Laws, and further directing that the Board "shall thereupon transmit [the] same to the Speaker of the House of Delegates of Maryland." The trial court went on to deny all of Mr. Duffy's other requests for relief, stating "that this Court, pursuant to Article 33, Section 26-18 of the Maryland Annotated Code, has a very limited role with respect to the type of proceeding which was filed, and that is to conduct a fact finding hearing and send the results of that hearing to the State Administrative Board of Election Laws." Both Mr. Duffy and Mrs. Conaway filed appeals from the order.

On October 25, 1982, two days after the rendition of the jury's findings in the case under § 26-18, Mr. Duffy filed two separate actions in the Superior Court of Baltimore City. One action sought a declaratory judgment and the other

sought a writ of mandamus. Named as defendants in both suits were Mrs. Conaway, the State Administrative Board of Election Laws, the State Administrator of Election Laws, the Board of Supervisors of Elections for Baltimore City and the Administrator of that Board, and the Speaker of the House of Delegates. Both the declaratory judgment and the mandamus actions were based entirely upon the jury's findings made in the proceeding under § 26-18. Other than setting forth the jury's findings, there were no allegations made relating to Mrs. Conaway or the September 14th primary election. The relief sought included a declaration that Mrs. Conaway was ineligible for public office or employment for four years from September 14, 1982, and an order removing Mrs. Conaway from the ballot in the general election scheduled for November 2, 1982. On October 26, 1982, the Superior Court denied any relief in both cases, and Mr. Duffy filed an order of appeal in each of them.

As previously mentioned, we issued a writ of certiorari encompassing all three cases prior to any proceedings in the Court of Special Appeals.

### III.

In this Court, Mr. Duffy contends that the other relief which he sought should have been granted. His position is based entirely upon the argument that, in light of the jury's findings, subsection (g) of § 26-18 was applicable and required the disqualification of Mrs. Conaway as a candidate in the general election.

The governmental defendants and Mrs. Conaway, on the other hand, argue that § 26-18 (g) "was never intended to apply to cases involving the constitutional offices enumerated in 26-18 (d)." (Attorney General's brief, p. 12.) They agree with the court below that, in a suit under § 26-18 involving one of the offices set forth in subsection (d), the role of a court is limited to transmitting the transcript of evidence and the factual finding of the judge or jury to the State Administrative Board of Election Laws.

Finally, Mrs. Conaway in her cross-appeal from the order in the action under § 26-18, claims that errors were committed by the trial judge in evidentiary rulings and jury instructions.

During the oral argument in these cases, this Court sua sponte raised an additional issue, relating to the jurisdiction of the trial court in the action under § 26-18. In light of the separation of powers provision of the Maryland Constitution, set forth in Article 8 of the Declaration of Rights,[7] a court has no jurisdiction to perform a nonjudicial function, and any enactment which attempts to confer such a function on a court is unconstitutional. *Dep't of Nat. Res. v. Linchester,* 274 Md. 211, 226, 334 A.2d 514 (1975); *Cromwell v. Jackson,* 188 Md. 8, 52 A.2d 79 (1947); *Close v. Southern Md. Agr. Asso.,* 134 Md. 629, 633, 636-642, 108 A. 209 (1919); *Prince George's Co. v. Mitchell,* 97 Md. 330, 340, 55 A. 673 (1903); *Board of Supervisors v. Todd,* 97 Md. 247, 262-266, 54 A. 963 (1903); *Beasley v. Ridout,* 94 Md. 641, 658-660, 52 A. 61 (1902); *Baltimore City v. Bonaparte,* 93 Md. 156, 161-163, 48 A. 735 (1901); *Robey v. Prince George's County,* 92 Md. 150, 160-164, 48 A. 48 (1900). The question raised by us at oral argument was as follows: if the trial court's role under § 26-18 (d) is limited to gathering testimony, making findings of fact, and transmitting the testimony and findings to another governmental entity, does the statute impose a nonjudicial duty upon the court? If the answer is in the affirmative, the court below had no jurisdiction to entertain the § 26-18 petition. As indicated in our *per curiam* order of October 29, 1982, we concluded that the Superior Court of Baltimore City did lack jurisdiction.[8]

---

**7.** Article 8 of the Declaration of Rights provides:

"That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other."

**8.** As previously mentioned, the jurisdictional issue was raised by us sua sponte. Of course, jurisdiction is a matter which, if noticed, will be addressed by a court even though it was not raised by any of the parties. Biro v. Schombert, 285 Md. 290, 293, 402 A.2d 71 (1979); Smith v. Taylor, 285 Md. 143, 147, 400 A.2d 1130 (1979); State v. McCray, 267 Md. 111, 126,

## IV.

Before addressing the cases dealing with attempts to impose nonjudicial duties upon the courts, it is necessary to resolve the issue over the proper interpretation of subsections (d) and (g) of § 26-18. If Mr. Duffy's argument is correct, namely that under § 26-18 the court below was authorized to void the nomination of Mrs. Conaway at the September 14th primary election and order her name removed from the general election ballot, then no question concerning the imposition of a nonjudicial function would be presented. Under this interpretation, the court would have been empowered to render a judgment deciding the controversy.

In our view, however, Mr. Duffy's interpretation of § 26-18 is untenable. An examination of that statute shows that the Legislature contemplated two distinct types of proceedings, depending upon the office involved in the election. If the controversy over the alleged prohibited election practices, and their effect on the validity of the election, concerns one of the constitutional offices enumerated in subsection (d), then the court has no authority to decide the controversy. Instead, the function of the court is limited to taking testimony and rendering findings of fact as to whether prohibited practices were committed and by whom. These findings are to be submitted to the State Administrative Board of Election Laws which, in turn, is directed to submit them to the governmental entity which presumably is authorized to render a final decision and direct the appropriate relief. Subsections (e), (f) and (g) have no application to this type of proceeding under subsection (d). On the other hand, if the petition relates to an office other than one of those delineated in subsection (d), the proceeding is governed by subsections (e), (f) and (g). In such proceedings, the court is

---

297 A.2d 265 (1972). The same type of jurisdictional issue involved in this case, *i.e.*, the imposition of a nonjudicial function upon a court, has previously been raised by this Court sua sponte. Close v. Southern Md. Agr. Asso., 134 Md. 629, 633, 108 A. 209 (1919); Beasley v. Ridout, 94 Md. 641, 658, 52 A. 61 (1902).

empowered to render a *decision* on the validity of the election. Furthermore, the court's findings and decision are to be submitted to the Governor rather than to the State Administrative Board of Election Laws.

First, the plain language of § 26-18 (d) compels this interpretation. Subsection (d) begins by stating that if the petition relates to the election for certain offices, including register of wills, the court "shall have no power to declare any such election void." Subsection (d) is applicable to primary as well as general elections. *See* Art. 33, §§ 26-1 and 26-18 (a). Thus the court below had no authority to void the result of the September 14th primary election. If, as Mr. Duffy argues, subsection (g) is applicable and authorized the voiding of the September 14th primary election, there would be a clear conflict between subsections (d) and (g). An interpretation of a statute creating such a conflict is to be avoided; instead, all parts of the statute should be reconciled and harmonized if possible. *Supervisor v. Southgate Harbor,* 279 Md. 586, 590, 369 A.2d 1053 (1977); *Blumenthal v. Clerk of Cir. Ct.,* 278 Md. 398, 403, 365 A.2d 279 (1976); *Holmes v. Crim. Injuries Comp. Bd.,* 278 Md. 60, 66, 359 A.2d 84 (1976); *Prince George's Co. v. White,* 275 Md. 314, 318-319, 340 A.2d 236 (1975).

Other language in subsections (d), (e), (f) and (g) confirms that (g) is inapplicable to a proceeding under (d). Subsection (d) refers only to the court's "finding" as to whether or not prohibited practices were committed, whether the finding is rendered by a judge or a jury. It is this "finding" which is to be submitted to the State Administrative Board of Election Laws. The word "decision" is not used in subsection (d). But subsections (e) and (f), which concededly apply only to offices other than those referred to in (d), refer both to the court's "finding" and to its "decision" as to whether or not the challenged election was void. Subsection (g) similarly refers to both a "finding" and a "decision," indicating that (g) relates only to those elections governed by (e) and (f).

Moreover, under subsection (f), if the court's "decision or finding filed with the Governor" was that the election was

void, the Governor is directed to issue a proclamation declaring such election void. Subsection (g), following immediately thereafter, begins by stating that "[i]f any candidate shall have been *so found or decided* to have engaged in any prohibited practice, he shall be ineligible to election or appointment to any public office" etc. (Emphasis added.) Under ordinary rules of English usage, "so" would refer to the immediately preceding method of "decision or finding." That method is the one set forth in (e) and (f) and not the one contained in (d).

There is yet other language tying subsection (g) to the elections covered by subsections (e) and (f). Subsection (f) states that "such election [, *i.e.,* where the finding is filed with the Governor,] shall be void, except as *hereinafter* provided." (Emphasis added.) "Hereinafter" can only refer to subsection (g) because not only does (g) follow (f) but also only subsection (g) provides an exception from a determination that the election is void.[9]

In attempting to rebut the interpretation that subsection (g) does not apply in this case, Duffy makes the following argument: "However, to state that the provisions of subsection (g) relate only to those certain cases outlined in subsection (e) is to ignore the literal language there. An express reference to subsection (e) is contained within subsection (f). No such reference is found in subsection (g)." (Brief of Appellant Duffy, p. 5.) The problem with this argument is that the division of what is now § 26-18 into subsections, and the insertion of subsection references, came about as part of a general recodification of the Election Code by Ch. 739 of the Acts of 1957. It is a settled principle of statutory construction that a change in a statute as part of a general recodification will ordinarily not be deemed to modify the law unless the change is such that the intention of the Legislature to modify the law is unmistakable. *Office & Professional Employees v. Mass Transit Administration,* 295 Md. 88, 100,

---

**9.** *See* note 6, *supra,* for a discussion of this exception.

453 A.2d 1191 (1982); *Bureau of Mines v. George's Creek,* 272 Md. 143, 155, 321 A.2d 748 (1974). Prior to 1957, and from the time of its initial enactment by Ch. 122 of the Acts of 1908, what is now § 26-18 was not divided into subsections and, of course, contained no subsection references. What is now subsection (g) followed immediately after what is now subsection (f) as part of the same paragraph. Although Ch. 739 of the Acts of 1957 divided the section into subsections, the essential language of the section has remained the same since 1908.

In fact, the section as originally enacted contains further confirmation that the General Assembly intended that the court have a limited fact-finding role if the petition related to certain constitutional offices, including register of wills. As enacted by Ch. 122 of the Acts of 1908, what is now Art. 33, § 26-18 was Art. 33, § 173. The section referred to the court either "holding such inquest or presiding in said cause," suggesting the two distinctive types of proceedings contemplated by the statute depending upon the office involved. The final sentence of § 173 also provided for an appeal to the Court of Appeals "from any *decision* relative to ineligibility to public office or employment of any such candidate." No appeal was provided from a court's "finding" relating to one of the offices enumerated in that portion of § 173 corresponding to the present subsection (d), thereby indicating that in such proceeding the trial court was not empowered to render a decision settling the rights of the parties. *Cf., Jolley v. State,* 282 Md. 353, 355, 384 A.2d 91 (1978) (" 'to be final a judgment must actually settle the rights of the parties' "), and cases there cited.

It is obvious that Art. 33, § 26-18 (d), from the time it was first enacted in 1908, was designed to implement in part constitutional provisions such as Art. III, § 19, or Art. IV, § 12, of the Maryland Constitution, conferring upon a governmental entity other than the courts the authority to judge the election and qualification of candidates at certain contested elections.[10] To the extent that a contested election

**10.** *See also* Art. 33, §§ 19-1 through 19-8, also designed to implement

issue falls within one of those constitutional provisions granting the authority to the House of Delegates or Senate or other body, the authority of such body to resolve the issue is ordinarily exclusive and precludes an initial decision by the courts. *Price v. Ashburn,* 122 Md. 514, 525, 89 A. 410 (1914) (contested election for state senator); *Covington v. Buffett,* 90 Md. 569, 577-579, 45 A. 204 (1900) (same); *Ijams v. Duvall,* 85 Md. 252, 260, 36 A. 819 (1897) (contested election for judge); *Munroe v. Wells,* 83 Md. 505, 508, 35 A. 142 (1896) (contested election for clerk); *Hamilton v. Carroll,* 82 Md. 326, 338, 33 A. 648 (1896) (special election for removal of county seat); *Groome v. Gwinn,* 43 Md. 572, 626 (1875) (contested election for Attorney General); *Brooke v. Widdicombe,* 39 Md. 386, 399, 404 (1874) (contested election for clerk); *Magruder v. Swann,* 25 Md. 173, 204 (1886) (contested election for judge); *State v. Jarrett,* 17 Md. 309, 327 (1861) (contested election for comptroller).[11] Consequently, under subsection (d) the court has no authority to decide the controversy or make a judgment on the validity of the election. Instead, with regard to an election for register of wills, subsection (d) contemplates that the court gather evidence and submit factual findings to the House of Delegates.

## V.

Having determined the function of the judiciary under Art. 33, § 26-18 (d), we now consider "whether it is within the constitutional power of the Legislature to impose upon

---

such constitutional provisions. No issue under §§ 19-1 through 19-8 or concerning the relationship between those sections and § 26-18 is presented in this case

**11.** For cases in other jurisdictions so holding, *see, e.g., In re* McGee, 36 Cal.2d 592, 226 P.2d 1, 3 (1951); State v. Corley, 36 Del. 135, 172 A. 415 (1934) (en banc); Dinan v. Swig, 223 Mass. 516, 112 N.E. 91 (1916); State *ex rel.* Ford v. Cutts, 53 Mont. 300, 163 P. 470 (1917); State *ex rel.* Smith v. District Court, 50 Mont. 134, 145 P. 721 (1914).

While a non-judicial body will ordinarily have initial exclusive jurisdiction under these circumstances, there is authority indicating that the courts may retain a limited review role. Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969); 63 Op. Att'y Gen. (Md.) 370, 370-375 (1978).

the judiciary, or invest them with, a function of this character, and whether the judiciary in the attempt to discharge such a function are not acting without constitutional warrant." *Board of Supervisors v. Todd, supra,* 97 Md. at 262. Although no precise definition of "judicial function" exists,[12] several of our opinions have provided guidelines applicable to the instant case.

In *Robey v. Prince George's County, supra,* 92 Md. 150, this Court considered whether the Legislature could constitutionally impose on the circuit courts the function of approving or disapproving the accounts of County Commissioners. The statute in question made approval of the accounts a condition precedent to the Commissioners' payment of the accounts for services performed for the county. The Court declared the statute unconstitutional because it imposed a non-judicial function on the circuit courts. As a prerequisite to approving the accounts, the circuit court judge would need to

> "know whether the services have been rendered, and they can only know this after evidence has been adduced to show it. They must then go into an *inquiry of fact,* perhaps require the attendance of witnesses from remote sections of the county and thus in reality *become mere auditors for the County Commissioners.*" (92 Md. at 160, emphasis added.)

This Court held that the circuit court could not act as a mere fact finder for the County Commissioners.

Other situations in which this Court has invalidated legislation imposing nonjudicial functions upon the judiciary were recently reviewed by Judge Digges for the Court in *Dep't Of Nat. Res. v. Linchester, supra,* 274 Md. at 226:

---

**12.** As stated in *Todd,* 97 Md. at 264:

"It is quite unnecessary to undertake to define here the essential qualities of a judicial act or to prescribe the precise limits to be observed by the legislative branch of the government in assigning duties to the Judiciary. Such attempt could, in its results, only be misleading and confusing. It would not be practicable to lay down a rule for all cases; and it would be inappropriate that the Courts should undertake to do this."

"Because courts cannot be required to exercise nonjudicial duties it has been held by this Court that it is beyond the power of the Legislature to require the judiciary to: ... perform duties tantamount to a board of review in assessing property for tax purposes, *Baltimore City v. Bonaparte,* 93 Md. 156, 48 A. 735 (1901); appoint a board of visitors to supervise the county jail, *Beasley v. Ridout,* 94 Md. 641, 52 A. 61 (1902); provide for referendum concerning issuance of liquor licenses, *Board of Supervisors v. Todd,* 97 Md. 247, 54 A. 963 (1903); issue licenses permitting pari-mutuel betting on horse races, *Close v. Southern Md. Agr. Asso.,* 134 Md. 629, 108 A. 209 (1919); and issue liquor licenses, *Cromwell v. Jackson,* 188 Md. 8, 52 A.2d 79 (1947)."

In Art. 33, § 26-18 (d), as applied to an election for register of wills, the Legislature intended that the circuit court act as a mere collector of evidence and fact finder for the House of Delegates. The court's order under that section "binds nobody and determines nothing." *State ex rel. Haines v. Searle,* 59 Minn. 489, 492, 61 N.W. 553 (1894). This is not a judicial function under our holdings that a controversy, to be justiciable, must be "capable of final adjudication by the judgment or decree to be rendered." *Tanner v. McKeldin,* 202 Md. 569, 576-577, 97 A.2d 449 (1953). *See also Harford County v. Schultz,* 280 Md. 77, 81, 371 A.2d 428 (1977).

Other courts have reached similar conclusions. In *Dinan v. Swig,* 223 Mass. 516, 112 N.E. 91 (1916), the Massachusetts Supreme Judicial Court held unconstitutional a statute similar to § 26-18 (d) relating to successful candidates for the Massachusetts House of Representatives. In language fully applicable to the instant case, the Massachusetts Court stated (223 Mass. at 520):

"But [the Legislature] cannot require the judiciary as a co-ordinate department of government to hold a trial and render a decision which in its nature

must be purely tentative or advisory and wholly subject to its own review, revision, retrial or inaction. This would be imposing upon the judicial department of the government the investigation of a matter not resulting in a judgment, not finally fixing the rights of the parties and not ultimately determining a state of facts. It would subject a proceeding arising in a court to modification, suspension, annulment or affirmation by a part of the legislative department of government before it would possess any definitive force. Manifestly this is in contravention of art. 30 of the Declaration of Rights which marks the entire separation of the legislative and judicial departments of the government."

*See State ex rel. Smith v. District Court,* 50 Mont. 134, 145 P. 721 (1914). *See also Scheibel v. Pavlak,* 282 N.W.2d 843 (Minn. 1979).[13]

We therefore hold that Art. 33, § 26-18 (d), by imposing a non-judicial function upon the judiciary, violates Article 8 of the Maryland Declaration of Rights. Consequently, the Superior Court of Baltimore City had no jurisdiction to entertain a petition under § 26-18 (d). As the declaratory judgment and mandamus actions were based entirely upon the jury's findings in the suit under § 26-18 (d), the orders denying relief in the declaratory judgment and mandamus

---

**13.** In *Scheibel,* the Minnesota Supreme Court, quoting the same language from the Supreme Judicial Court of Massachusetts in *Dinan,* held a similar statute unconstitutional in regard to appellate review of such opinions. The court sustained the statute as it applied to trial judges due to the particularities of the Minnesota Constitution. Notwithstanding, the court recognized that "[t]he trial judge selected by the parties to the election contest acts, in effect, as an agent of the legislative body involved." *Id.* at 850.

actions were correct.[14]

---

**14.** In holding that Art. 33, § 26-18 (d), is invalid because it imposes a non-judicial function upon the judiciary, we do not intend to imply that subsection (d) would be constitutional if amended to authorize a court to decide the controversy and void the election with respect to the offices listed in (d). While such amendment would cure the non-judicial function defect, it might still present serious constitutional problems under provisions such as Art. IV, § 12, or Art. III, § 19, of the Maryland Constitution which vest jurisdiction in another governmental body to judge the election and qualification of candidates for certain offices. As previously mentioned, this Court has indicated that, under provisions like Art. IV, § 12, the jurisdiction of a governmental body like the House of Delegates is exclusive. *See* Price v. Ashburn, 122 Md. 514, 525, 89 A. 410 (1914); Covington v. Buffett, 90 Md. 569, 577-579, 45 A. 204 (1900); Ijams v. Duvall, 85 Md. 252, 260, 36 A. 819 (1897); Munroe v. Wells, 83 Md. 505, 508, 35 A. 142 (1896); Hamilton v. Carroll, 82 Md. 326, 338, 33 A. 648 (1896); Groome v. Gwinn, 43 Md. 572, 626 (1875); Brooke v. Widdicombe, 39 Md. 386, 399, 404 (1874); Magruder v. Swann, 25 Md. 173, 204 (1866); State v. Jarrett, 17 Md. 309, 327 (1861). In fact, it could be argued that the present subsection (d) interferes with this exclusive jurisdiction and is invalid on such ground. *See* State v. District Court of Fourth Judicial Dist., 107 Mont. 370, 374, 86 P.2d 5, 7 (1938); State ex rel. Ford v. Cutts, 53 Mont. 300, 163 P. 470 (1917).

On the other hand, it may be argued that Art. IV, § 12, despite its reference to "*any* contested election for Judges, Clerks of the Courts of Law, and Registers of Wills" (emphasis added), does not apply to a primary election and therefore would not preclude a court's jurisdiction. *See* Foxwell v. Beck, 117 Md. 1, 82 A. 657 (1911). *But cf.* Mahoney v. Sup. Of Elections, 205 Md. 325, 336, 106 A.2d 927, 108 A.2d 143 (1954); Mahoney v. Sup. Of Elections, 205 Md. 344, 352-353, 108 A.2d 151 (1954).

In light of our holding that § 26-18 (d) imposes a non-judicial function upon the courts, we need not in this case decide these other issues.